Peelle, Ch. J.,
delivered the opinion of the court:
To the petition filed herein the defendants interpose a demurrer, assigning as ground therefor “ that the petition does not allege facts sufficient to constitute a cause of action.”
The facts averred and which are material to the case are that the claimant, a native citizen of the island of Porto Pico, did, on the 8th day of April, 1878, purchase from one Florencio Berrios y Lopez for a valuable consideration a certain purchasable office known as “numbered procurador of the courts' of first instance of the capital of Porto Pico,” at Guayamo, in perpetuity, and that the provisional patent issued therefor by the governor-general of said island was, on or about October 31, 1881, approved by the King of Spain through the minister of the colonies of the Kingdom of Spain in accordance with the laws, practice, and custom of the Kingdom-of Spain,- by virtue of which it is avei’red that the claimant “ became vested with all the rights and privileges appurtenant to said office under said laws,” which said office was then and there reasonably worth $200 per month; and that being thus clothed the claimant exercised all the rights and privileges pertaining to said office of pro-curador or solicitor from the time said office was confirmed in him until August 31, 1899, when said office was abolished, as hereinafter set forth.
*473 That the United States took possession of said island during their war with Spain and .maintained a military government therein from about October, 1898, to April 30, 1900. That while in the possession and military control of said island, to wit, December 10, 1898, the treaty of peace between the United States and the Kingdom of Spain was concluded, and having been signed by the respective plenipotentiaries at Paris was subsequently ratified by the respective Governments,' which ratifications were,. on April 11, 1899, exchanged at the city of Washington and on the same day proclaimed by the President.
That by virtue of article 2 of said treaty the island of Porto Rico was ceded to the United States; and by article 8 it was “ declared that the relinquishment or cession, as the case may be, to which the preceding paragraph refers, can not in any respect impair the property or rights which by law belong to the peaceful possession of property of all kinds, of provinces, municipalities, public or private establishments, ecclesiastical or civic bodies, or any other associations having legal capacity to acquire and possess property in the aforesaid territories renounced or ceded, or of private individuals of whatsoever nationality such individuals may be,” etc.
That the office so purchased- and held by the claimant was on said 31st day of August, 1899, abolished by General Order No. 134, issued by General Davis, in command of said island as military governor thereof, paragraphs 11, 12, and 13 of which are as follows:
“ XI. The office of solicitor (£ procurador ’) is abolished. Those who have heretofore practiced as such before any court and are of good repute shall, in default of lawyers, have the right to be appointed municipal judges or clerks of municipal courts.
“ XII. Hereafter litigants who do not appear personally shall be represented before the Supreme Court and district courts exclusively by a lawyer, no powers of attorney being-necessary therefor; it shall be the duty of the courts to suspend from the practice of his profession any lawyer .who shall, without authority, assume to represent a litigant; but this shall not affect the civil or criminal liability which such lawyer may thereby incur.
*474 “ In the municipal courts, litigants may represent themselves or may be represented by an attorney in fact, resident of the place.
“ XIII. For the purpose of conducting the proceedings, lawyers may make use of such agents as they may by writing designate to the court.”
That said order was issued without any notice whatever to the claimant and without complaint as to the manner in which the claimant was exercising the duties of said office.
That thereafter by section 8 of the act of April 12, 1900 (31 Stat. L., 77, 79), being an act entitled-“An act temporarily to provide revenues and a civil government for Porto Pico, and for other purposes,” Congress ratified, among others, said order in these words:
“ Sec. 8. That the laws and ordinances of Porto Pico now in force shall continue in full force and effect, except as altered, amended, or modified hereinafter, or as altered or modified by military orders and decrees in force when this act shall take effect, and so far as the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions hereof, until altered, amended, or repealed by the legislative authority hereinafter provided for Porto Pico or by act of Congress' of the United States * * * .”
That the claimant by virtue of'the laws of Spain had a vested property right in and to said office at the time the general order was issued, and that by reason of said order the claimant was deprived of his right to discharge the duties of said office and to receive the emoluments thereof to his loss and damage in the sum of $50,000.
The substance of the facts averred is that the claimant held by purchase in conformity with the laws, usage, and customs of the Kingdom of Spain in force in the island of Porto Pico the office of procurador or solicitor in perpetuity, the salary of which was about $200 per month, and that by virtue thereof he had a vested property right in and to said office when the same was abolished as aforesaid, and that the abolition of said office operated as a taking of private property for public purposes, for which no compensation has been made.
The defendants, without plea thereto, raise the question of jurisdiction, claiming, in substance, first, that the act of the *475 commanding general as military governor in abolishing the office so held by the claimant was wrongful and unlawful and, therefore, tortious, and being tortious this court is without jurisdiction. We can not agree with the defendants that the act abolishing said office was unlawful or wrongful, though so averred in paragraph 10 of the petition. The order issued abolishing the office was in conformity with the •laws and usages governing the change or modification of the laws of newly acquired territory by conquest or cession; and being within the possession and rightful powers of the United States as the conqueror, the act abolishing the office was not tortious, and for that reason the defendants’ contention can not be sustained.
Second, the defendants further contend that whatever claim exists in favor of the claimant grows out of and is dependent upon the treaty between the United States and the Kingdom of Spain, by which said island was ceded to the United States, and that, therefore, under Revised Statutes, section 1066, this court is prohibited, from taking jurisdiction. But even if said section has not been repealed by the Tucker Act, we think the contention is untenable, because the claim as averred, if it exists, arises out of the act of the general in command of said island as military governor in abolishing the office, and not out of the treaty.
If, when the office was abolished, the claimant had any property right therein, then such right was preserved to him by article 8 of the treaty; but in the view we take the claimant had no property right in the office at the time of the issuance of said order; and having no property right therein, there is no claim growing out of or dependent upon the treaty; hence the defendant’s contention can not be sustained.
This brings us to the main question in the case, i. e., Did the claimant at the time of the issuance of the order abolishing* the office have any property right in the office which he held; and, if so, did said order operate to deprive him thereof for the public use ?
During the war with Spain the United States, in the exercise of their belligerent right, took possession by military force of the island of Porto Rico, then under the dominion *476 and sovereignty of Spain, and, as averred in paragraph 9 of the petition, maintained a military government in said island from about October, 1898, to April 30, 1900.
When the United States thus took and maintained possession of said island, the sovereignty of Spain was thereby appropriated by them, and the inhabitants of said island became subject to the will of the United States, though their private rights and their relations to each other remained the same. (The Fama,, 5 C. Rob., 126; United States v. Perche-man, 7 Peters, 86; United States v. Hayward, 5 Gallison, 52.)
And as the military occupation of said island was firm, the United States, by virtue thereof, acquired all the rights of the displaced sovereignty, including the right to acquire complete title at least to all movable property of a public character belonging to Spain, and as well the public offices therein having to do with the administration and execution of the laws in said island. (United States v. Rice, 4 Wheat., 246-254; Fleming v. Page, 9 How., 603-615.)
When the treaty of Paris of December 10, 1898 (30 Stat. L., 1754), was negotiated, the principle of uti possidetis was recognized, i. e., the right to retain possession of the territory acquired by force during the war, and as there is no stipulation in the treaty to the contrary, the island was left in the state in Avhich it was found. Hence the title of the conqueror in the public movable property as well as to the public offices created by the sovereignty of Spain could not thereafter be questioned. (Wheaton’’s International Law, sec. 545.)
However, whether the island be considered as acquired by conquest or by cession on the basis of possession of the territory by force, the inhabitants in either case became subject to the sovereignty of the United States', the difference in substance being that in case of conquest confirmed by a treaty grounded on the principle of uti possidetis, the sovereignty is appropriated, while if acquired by expressed cession the sovereignty is transferred by the act of the State making the cession. (Hall’s International Law, sec. 206.) The former, however, was the course which Spain was forced *477 to pursue; that is, by virtue of the military possession of the island, Spain was forced, as a condition of peace, to cede to the United States the island so acquired and held, not that the cession was necessary to give to the United States the sovereign control of the island, but it operated to confirm in them all the rights which they had theretofore acquired by conquest.
The release of the island from the sovereignty of Spain, whether effected by coercion or by conquest, imposed no obligation upon the United States to indemnify those who may have suffered loss of property by such cession. (1 Kent's Commentaries, p. 178.) If, therefore, the claimant’s loss of property in the office he held by purchase was due to the cession so made, rather than by conquest, no liability attached to the United States to make compensation therefor.
Conceding that prior to the conquest the claimant had, as between himself and Spain, a property right in the office, such right under the laws of Spain existed only by virtue of said office being a salable one in perpetuity, which office and tenure rested wholly in the sovereignty of Spain, so that when the sovereignty of Spain was displaced and superseded by the sovereignty of the United States and confirmed by the treaty without any words therein making the office perpetual in the claimant under the sovereignty of the United States, all right of property in and to said office was lost by the withdrawal of the sovereignty of Spain.
After the conquest of the island and the confirmation thereof by the treaty as aforesaid, the claimant, if he continued to hold said office, did so at the sufferance and will of the United States, and no right of property in said office can be predicated on such continuance in office.
The office so held by the claimant, as well as all other offices having to do with the execution and administration of the laws in force in said island, were subject to the will and control of the United States exercised through the President as Commander in Chief of the Army and Navy of the United States, or the Congress; and being so subject, and there being no restrictive words in the treaty, the claimant could have been removed from office or the office abolished, as was *478 done at the will of the President acting through the military governor, without imposing upon the United States any obligation to compensate the incumbent of said office for any loss he may have sustained thereby. True, under the rules of international law, the laws, uses, and municipal regulations in force in the island at the time of the conquest or cession remained in force until changed by the new sovereign. (Mitchell v. The United States, 9 Peters, 711-735.) But such change is an inherent right to be exercised at the will of the conqueror without condition or restriction unless imposed by the terms of the treaty.
As no right of property in the office held by the claimant was reserved to him by the treaty none survived it, and, therefore, when the office was abolished the claimant had no property right therein which was the subject of a taking for public use.
The provisions of article 8 of the treaty, upon which the claimant relies for the preservation of his right of property, are merely declaratory of the rights which belong to the inhabitants of a territory acquired by conquest or treaty. That is to say, their rights of property not taken from them by order of the conqueror remain undisturbed. In other words, as before stated, the cession or conquest of territory does not affect the rights of private property. (The Fama, 5 C. Hob., supra.)
But in the present case, as the claimant’s right of property was annexed to the public office which he held by purchase in perpetuity and existed wholly in-the sovereignty of Spam, such right was exceptional, and in the absence of any words making the office perpetual in the claimant under the sovereignty of the United States, was taken away by the act of Spain when she withdrew her sovereignty. In other-words, the claimant’s exceptional right of property in the office which he held was not preserved to him by the terms of the treaty; and not being within the ordinary rules protecting the private property of the inhabitants of territory acquired by conquest or cession, he stands on no better terms than other public officers in said territory.
We have thus considered the case-upon the theory of the claimant having, as between himself and Spain, a property *479 right in the office which he held, though under the laws of the United States such office is a public trust in which the .incumbent can have no property interest. (United States v. Hartwell, 6 Wall., 385-393.)
Nor is a public office with us the subject of sale, purchase, or barter. (Taylor v. Beckman, 178 U. S., 548-577.)
Nor can such office be termed a hereditament, or a thing capable of being inherited. {3d Kent's Commentaries, 454.)
The right to exercise an office in the United States is not based upon contract or grant, but is conferred as a trust to be exercised for the public benefit. (United States v. Hartwell, supra.) True, some of our States proceed upon the theory of the incumbent having a property right in the office of which he can not be deprived without the judgment of a court, but such view has no foundation in a representative government. (Anderson's Law Dictionary, 727; State ex rel, Atty. Gen. v. Hawkins, 44 Ohio St., 199; Donahue v. County of Will, 100 Ill., 94.)
But we need not pursue the question any further as there is no language in the treaty perpetuating the office in the claimant, and therefore it must be held that in respect to his right to the office in question he stands upon the same ground as other public officers in the island at the time of the cession of the territory.
For the reasons stated the demurrer must be sustained and the petition dismissed, which is accordingly ordered.
Howry, J., was not present when this case was tried and took no part in the decision.