## LUSE v. MARTIN.

### (Circuit Court of Appeals, Eighth Circuit. April 16, 1914.)

### No. 3988.

CONTRACTS (§ 176*)—CONSTRUCTION—QUESTIONS FOR JURY.

> A contract by which plaintiff agreed to sell to defendant certain securities to be paid for in cash and stock of a railroad company "as soon as" 100 miles of the road of such company should have been built by defendant and his associates held so uncertain on its face as to whether the sale itself or only the time of payment was conditioned on the building of such road as to justify the court, in an action to recover the purchase price of the securities after the building of the road had been abandoned, in submitting the question to the jury on evidence of the relations of the parties and the surrounding circumstances.

> [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 767–770, 917, 956, 979, 1041, 1097, 1825; Dec. Dig. § 176.*]

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action at law by Jesse F. Luse against John E. Martin. Judgment for defendant, and plaintiff brings error. Affirmed.

George S. Grimes, of Minneapolis, Minn. (George L. Davis, of Kansas City, Mo., on the brief), for plaintiff in error.

David F. Simpson, of Minneapolis, Minn. (Robert G. Morrison, Wm. A. Lancaster, and Milton D. Purdy, all of Minneapolis, Minn., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

HOOK, Circuit Judge. Luse sued Martin upon a contract embraced in an accepted written proposition the material part of which is as follows:

"I (Luse) hereby make you (Martin) the following proposition for immediate acceptance regarding my interests in the Southwestern Traction Company, and in the other property mentioned herein: You to pay me seventy-five thousand ($75,000.00) dollars in cash, and fifty thousand ($50,000.00) dollars par value of the stock of the Kansas City & Kansas Southwestern

---

Railway Company, the cash to be paid and the stock to be delivered as soon as that part of the Kansas City & Kansas Southwestern Railway, 100 miles in length from Independence, Kansas, north, shall have been built by yourself and associates, or if you should sell your interest in said road—sale to be made subject to this proposition, it being understood that Independence, Kansas, shall be a point on the said railway line. I agree, however, that should the said stock be held in escrow for construction company purposes, or for any other similar, reasons be impossible of delivery as above called for, to waive such delivery for a reasonable time, pending the termination of such escrow or other arrangement. For the above consideration, I agree to turn over at once to yourself or to whomsoever you may direct, property assigned and transferred, and to take any action necessary to perfect the title in you the following property."

Following the above were a description of certain notes, bonds, stocks, etc., and some details which need not be set forth here. The venture in which the railroad was to be built failed, and no part of the hundred miles of road was constructed. The action was for $125,000, being $75,000 in cash and $50,000, the par value of the stock in the railway company named. The trial court was of opinion that upon the face of the contract there was a reasonable doubt whether the sale and purchase of the securities was intended to be absolute or conditioned upon the building of the 100 miles of railroad, and it submitted the question to a jury upon evidence of the relations of the parties and the surrounding circumstances, and also the further question whether, if so conditioned, the defendant did all a reasonable man should do to bring the condition about. The jury found for the defendant, the court gave judgment in his favor, and the plaintiff prosecuted this writ of error.

The contention of the plaintiff is that the terms of the contract are so definite, certain, and unambiguous as to preclude construction; that they disclose an unconditional sale of his securities and an obligation of the defendant to pay the price upon, or at the end of a reasonable time for, the completion of the hundred miles of railroad; and therefore the trial court should have so declared as matter of law and should have neither received extrinsic evidence nor submitted the questions to a jury. We think, however, the court was right. The case is unlike those in which an existing debt or obligation to the plaintiff is recited the payment of which is postponed to a future event for the benefit or convenience of the defendant. In such cases the debtor is held to bring the event about, or failing to do so, then to pay within a reasonable time. It would be unreasonable to put the very existence of a conceded debt or obligation to the hazard of a contingency except upon clearest words to that effect and sufficient consideration. But here there was no debt, obligation, or consideration preceding the undertaking of the defendant. All there was of that nature first arose with the other terms and provisions of the contract, and it is not clear from the face of the contract whether the contingency, the construction of the railroad, conditions the sale itself or merely relates to the time for payment. Manifestly the parties did not employ the customary terms to indicate an absolute sale, and their omission in this particular is not wholly explained by the expectation of a final, formal contract embodying the same provisions. From the plaintiff's side the proposition was one "regarding my interests," and it stated "that the sale if

effected" of certain of the specified securities also carried others. The cash and stock were to be paid and delivered by defendant "as soon as" the hundred miles of railroad "shall have been built by yourself and associates, or if you should sell your interest in said road—sale to be made subject to this proposition." The plaintiff contends that by the contract made by his proposition and defendant's acceptance the latter did "assume the obligation to build the railroad" within a reasonable time. If this were so, the undertaking of the defendant was in the nature of a guaranty, since the work contemplated involved the co-operation of his associates. Had the parties so intended, the simple, effective course would have been to add express words to that effect to the clause relating to the building of the railroad. There are no such words in the contract. The contention therefore is that they are implied, but extending a contract beyond its express terms by drawing implications is the very essence of construction, and when construction is resorted to, as must be in the case before us, other things should be considered, such as the matters about which the parties were dealing and their relations to them and to each other. Those things were in their minds when they made their contract, and a court should be as well informed when called upon to go beyond their express provisions and to construe and apply them. There is no more reason for inserting in the contract by implication a guaranty by the defendant that he and his associates would build the railroad than there is for implying a mere undertaking by him that he would use his best endeavors to have the work done. On the very face of the contract there is a suggestion that plaintiff's rights were to run with the venture. It is expressly provided that if defendant sold his interest in the road the sale should be subject to the contract.

A case quite in point is Bradley v. Packet Company, 13 Pet. 89, 10 L. Ed. 72, the doctrine of which was recently affirmed and applied in Lowry v. Hawaii, 206 U. S. 206, 221, 27 Sup. Ct. 622, 51 L. Ed. 1026. November 19, 1831, Bradley made the following written proposition to the Packet Company:

"I agree to hire the steamboat Franklin until the Sydney is placed on the route, to commence to-morrow, 20th inst. at $35.00 per day clear of all expenses other than the wages of Captain Nevitt."

On the same day the president of the company replied in writing accepting the proposition and restating the terms proposed including the words: "Use of the steamboat Franklin until the Sydney is placed on the route." These writings made the contract by which Bradley hired the steamboat of the company until his own was put in commission. Fifteen days later, December 5th, Bradley discontinued the use of the boat he hired, saying that navigation was closed by ice and that he had commenced carrying the mail, which was his occupation, by land. The company refused to accept the discharge of its boat and brought suit. Bradley offered to prove at the trial that for several years immediately preceding the contract he had been and still was the contractor for carrying the mail from Washington to Fredericksburg, that the customary route was from Washington to Potomac Creek, thence by land to destination, that passengers also were usually transported by

that route, that during all the time he had used a steamboat of his own and had also kept an establishment of horses and stages for use by land when navigation was stopped by ice, and had been obliged for a considerable portion of every winter to use the stages and horses all the way by land meanwhile laying up his steamboat, that just before the date of the contract his own boat usually employed had been disabled, and he was at the time about completing a new boat called the Sydney, which was then at Baltimore in the hands of workmen, and various other facts connected with his stopping the use of the Franklin; also, that it was known and understood by the company when the contract was made that as soon as navigation was closed by ice the mail would have to be transported all the way by land, and that then the Franklin would not be required by him and could not be used. The trial court excluded the proffered evidence, but the Supreme Court held its exclusion was erroneous. It said the case was within the rule:

"Which admits extrinsic evidence for the purpose of applying a written contract to its proper subject-matter," which "extends beyond the mere designation of the thing on which the contract operates, and embraces within its scope the circumstances under which the contract concerning that thing was made, when without the aid of such extrinsic evidence, such application of the written contract to its proper subject-matter could not be made."

In United States v. Hartwell, 6 Wall. 385, 396 (18 L. Ed. 830), it was said of a statute:

"If the language be clear it is conclusive. There can be no construction where there is nothing to construe."

The rule is equally applicable to contracts. But reasonable differences of opinion as to their scope and meaning frequently occur with statutes as with contracts. In a case of the former it is the common course to look at the conditions out of which the legislation grew and to have recourse to other extrinsic aids to construction. In the case of a contract there is no surer guide to the intention than "to let in the light of the surrounding circumstances—to see as the parties saw, and to think as they must have thought, in assenting to the stipulations by which they are bound." Scott v. United States, 12 Wall. 443, 444, 20 L. Ed. 438. In the case at bar the question of the intention of the parties in respect of a definite feature of their contract involved a consideration of extrinsic facts and circumstances, and it was proper to submit them to a jury under appropriate instructions. The parties contracted with reference to the construction of the railroad as well as the sale and purchase of plaintiff's securities. The former was a part of the subject of the contract, and it was vital to know whether it was the intention that defendant should guarantee the construction in the absence of express words to that effect.

In the admission of evidence the court permitted a wide latitude, but we do not think that, considering the nature of the case and the dealings of the parties in view of which their contract was made, its discretion in that respect was abused. There was substantial evidence supporting the finding of the jury that it was intended that plaintiff's sale of his securities should depend upon the construction of the railroad which defendant did not absolutely undertake or guarantee, and

that the latter did all a reasonable man could do in that direction. In brief and most general outline the jury may well have found that the plaintiff and the defendant had been for some years prior to the contract associated in unsuccessful attempts to promote the building of interurban railroads in Southeastern Kansas, and the plaintiff's securities in question were the outgrowth of those attempts and were of doubtful value; that any considerable value depended upon the success of a new venture in which another party of men were jointly associated with them and into which their old interests were to be turned; and that the new venture in turn depended upon the sale of an issue of $10,000,000 of bonds, largely in Europe, as to which they had no assurance upon which a business man would reasonably rely; that the $75,000 cash mentioned in the contract represented the amount plaintiff had put into the old ventures and interest, and the $50,000 of stock a proportion, by way of profit, in a new venture, of the stock that would be left for the promoters or the construction company; and that the immediate occasion of the contract sued on was the mutual conviction that because of differences which had developed between the plaintiff and defendant in another business the new project would be better served if one or the other retired from active participation and was no longer able to speak authoritatively in its affairs. The details shown by the evidence and applied to this general situation made the intention of the parties almost as clear as in Bradley v. Packet Company, supra. And the long silence of the plaintiff was consistent with the finding of the jury. He did not assert a claim under the contract until nearly four years after its date and nearly two years after it became apparent that the enterprise had failed. A question is made about the return of the securities in their original form. It was contemplated by both parties that in effect they should be used or covered into the new venture to clear the way. We do not think there is anything else in the assignments of error sufficient to disturb the judgment.

The judgment is affirmed.