216

**CALLAHAN v. UNITED STATES.**

**MEYER v. MORGENTHAU, Secretary of the Treasury, et al.**

Nos. 7798, 7799.

United States Court of Appeals for the District of Columbia.

Argued June 10, 1941.

Decided July 21, 1941.

C. A. Horsky, of Washington, D.C. (W. Graham Clayton, Jr., of New York City, on the brief); for appellants.

John L. Laskey, of Washington, D. C. (Edward M. Curran, Charles B. Murray, and Dennis McCarthy, all of Washington, D.C., on the brief), for appellees.

Before GRONER, C. J., and EDGERTON and RUTLEDGE, Associate Justices.

I.

EDGERTON, Associate Justice.

The only question in appellant Meyer's suit, No. 7799, is the method of calculating overtime pay in the customs service. The pertinent statute provides: "That the Secretary of the Treasury shall fix a reasonable rate of extra compensation for overtime services * * * such rates to be fixed on the basis of one-half day's additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five o'clock postmeridian (but not to exceed two and one-half days' pay for the full period from five o'clock postmeridian to eight o'clock antemeridian), and two additional days' pay for Sunday or holiday duty. The said extra compensation shall be paid by the master, owner, agent, or consignee * * * to the collector of customs, who shall pay the same to the several customs officers and employees entitled thereto according to the rates fixed therefor by the Secretary of the Treasury. * * *"[1]

[1] Act of Feb. 13, 1911, c. 46, § 5, 36 Stat. 901, as amended by Act of Feb. 7, 1920, c. 61, 41 Stat. 402, 19 U.S.C.A. § 267.

From 1920, when the statute was amended to read as just quoted, until 1938, overtime pay was calculated on the basis of the statutory fractions and multiples of a regular day's pay. On August 4, 1938, the Acting Secretary of the Treasury promulgated a regulation, T. D. 49669, which amended article 1244 of the Customs Regulations of 1937 by adding the following paragraph: "(a) The daily rate of extra compensation for overtime services of customs officers and employees is fixed at the gross daily rate of regular compensation payable by the customs service to a customs officer or employee except when such gross daily rate of regular compensation is less than $5.00 or more than $8.00, then the daily rate of extra compensation is fixed at a minimum of $5.00 or a maximum of $8.00, as the case may be."[2]

Appellant Meyer, a deputy surveyor of customs, worked overtime from 5 p.m. to 6:20 p.m. on January 7, 1940. Half his regular day's pay was $4.86. He was tendered $4, in accordance with T. D. 49669. He declined this tender and demanded $4.86. On May 7, 1940, he brought this suit against appellees—the Secretary, the collector of customs, and the steamship company which had used appellant's services. He asks a declaratory judgment that he is entitled to $4.86 and that T. D. 49669 is invalid. He also asks a judgment against the company in favor of the collector, for his use, or in the alternative a judgment against the collector, for $4.86. Again in the alternative, he asks a mandatory injunction requiring the Secretary and the collector to pay him overtime compensation in accordance with the statute. The District Court granted appellees' motions to dismiss the complaint, on the ground that "the rate of pay is in the discretion of the Secretary of the Treasury." We think that this was erroneous, and that appellant is entitled, at least, to a declaratory judgment.

Appellees contend that the term "day's pay," as used in the statute, does not necessarily mean a day's pay at the employee's regular rate; but we cannot imagine what else it can mean. It cannot mean pay for a day of overtime. If it meant that, the context would require that a man be paid, for five hours of overtime, fifty per cent more than for a full day of overtime. Ob-viously, such a construction would be absurd. On the other hand, if "day's pay" is taken to mean a regular day's pay, the statute makes the entirely rational provision that for five hours of overtime a man shall receive fifty per cent more than one regular day's pay. We think it plain that this is what the statute means. It is therefore unnecessary to discuss at length the legislative and administrative history of the statute, which, however, confirms this understanding. The phrase, "the Secretary of the Treasury shall fix a reasonable rate of extra compensation," was carried into the present 1920 act from the 1911 act. The amendment of 1920 introduced the requirement that the rates be fixed "on the basis of one-half day's additional pay." Older general language cannot be allowed to overrule newer specific language. Even when general and specific provisions are enacted at the same time, if they are inconsistent, the specific limits the general.

Moreover, our construction does not, as appellees contend, deprive the older and general phrase of all meaning. The fixing of pay for overtime services involves two elements; the definition or measurement of "overtime services," and the definition of the pay for such services. The Secretary has, and exercises, a considerable discretion in regard to the first element. Thus the Customs Regulations of 1937, Art. 1244, provide: "(d) In computing extra compensation where the services rendered are in broken periods and less than 2 hours intervene between such broken periods, the time served should be combined with the waiting time and computed as continuous service. (e) Where 2 hours or more intervene between broken periods, one-half day's extra pay will be allowed for each distinct 2-hour period or part of a 2-hour period, if waiting time and actual service rendered within each period consist of at least 1 hour."[3]

II.

█ In appellant Callahan's suit, No. 7798, which was consolidated for hearing with Meyer's, the basic facts are the same except that Callahan, instead of being a deputy surveyor of customs, is a clerk in the entry division of the customs service. But whereas Meyer does not name the United States as a party, Callahan names the United States as sole defendant and

---

[2] 3 F.R.1969, 19 CFR 1938 Supp., 22.23.

[3] 19 CFR 22.23; as renumbered, 19 CFR 1938 Supp., 22.23.

asks judgment for $4.86 against the United States. The United States moved for summary judgment on the ground that the District Court lacked jurisdiction under the Tucker Act. The Tucker Act gives the District Courts jurisdiction, concurrently with the Court of Claims, of certain suits against the United States, excluding, however, "cases brought to recover fees, salary, or compensation for official services of officers of the United States."[4] The District Court, without ruling on the jurisdictional question, dismissed Callahan's complaint on the ground that the rate of overtime pay is in the discretion of the Secretary.

In Hoeppel v. United States,[5] we held that a West Point cadet, because he is appointed by the President, holds an "office" within the meaning of a statute punishing bribery in procuring appointment. We held that a person in the service of the United States who is duly appointed in any of the modes prescribed in Article 2, Section 2, Clause 2, of the Constitution, is an officer of the United States.[6] These modes include appointment by the President, by the courts, and by the heads of departments. Appellant Callahan was appointed by the Secretary of the Treasury, by authority of the Act of March 4, 1923, c. 251, Sec. 2, 42 Stat. 1453, as amended, 19 U.S.C.A. § 6.

Since we were dealing in the Hoeppel case with a statute which imposed criminal penalties, and are dealing in this case with a statute which merely regulates the jurisdiction of courts, there is less reason here than there for construing "officer" narrowly. Cases relied on by appellant, which held that certain persons were not "officers" within the meaning of criminal statutes, are not in point.[7] A postal clerk appointed by the Postmaster General,[8] a court reporter appointed by a court,[9] and a penal guard appointed by the Attorney General,[10] have all been held to be "officers" within the meaning of the Tucker Act, with the result that a District Court has no jurisdiction of their suits for compensation. United States v. Smith, 124 U.S. 525, 8 S.Ct. 595, 31 L.Ed. 534, holding that a clerk in the office of a collector of customs was not a "public officer", is doubly distinguishable. It involved a criminal statute, and, as the court pointed out, clerks in the customs service were not then appointed by the head of a department. We think appellant Callahan was an officer within the meaning of the Tucker Act. It follows that his complaint was rightly dismissed.

No. 7798 affirmed.

No. 7799 reversed.

---

[4] Act of March 3, 1887, c. 359, 24 Stat. 505, as amended, 28 U.S.C.A. § 41(20).

[5] 66 App.D.C. 71, 75, 85 F.2d 237, 241, certiorari denied 299 U.S. 557, 57 S.Ct. 19, 81 L.Ed. 410.

[6] " That a person who is appointed in accordance with the constitutional provision * * * is an officer of the United States is * * * clear." McGrath v. United States, 2 Cir., 275 F. 294, 300, 301, appeal dismissed 260 U.S. 709, 43 S.Ct. 249, 67 L.Ed. 475. United States v. Hartwell, 73 U.S. 385, 393, 6 Wall. 385, 393, 18 L.Ed. 830; United States v.

Germaine, 99 U.S. 508, 510, 25 L.Ed. 482.

[7] Martin v. United States, 8 Cir., 168 F. 198, 202; "if there is a reasonable doubt whether or not he was such, he ought not to be convicted or punished." United States ex rel. Lotsch v. Kelly, 2 Cir., 86 F.2d 613, 615; "penal statutes should be construed strictly."

[8] Foshay v. United States, D.C.S.D. N.Y., 54 F.2d 668.

[9] Oswald v. United States, 9 Cir., 96 F.2d 10.

[10] Baskins v. United States, D.C.E.D. S.C., 32 F.Supp. 518.