## HENDERSON v. UNITED STATES. CARROLL et al. v. SAME.

District Court, S. D. New York.
July 1, 1947.

J. Emerson Gough, by Edgar J. Treacy, both of New York City, for plaintiffs.

John F. X. McGohey, of New York City, by William T. Ard, of Jersey City, N. J., for defendant.

BONDY, District Judge.

The plaintiffs in these two actions brought under the Tucker Act, 28 U.S.C.A. § 41(20), and consolidated for the purposes of trial, seek to recover a bonus of five dollars for each day that they were stationed in the European Theatre of Operations as civilian personnel in the United States Army Transport Service.

They were appointed upon their civil service applications by the Major General in command of the port of embarkation, acting under authority delegated by the Secretary of War in Orders "M" dated August 13, 1942, relating to civilian personnel of the War Department. See Revised Statutes, § 169, as amended, 5 U.S. C.A. § 43; Civil Service Rules Schedule A IV 3; S.O.S. Civilian Personnel Memorandum No. 18 dated August 19, 1942; O.C.T. Personnel Bulletin No. 12 dated October 7, 1942; T.C. Circular No. 10—1 dated April 7, 1944. Each took the prescribed oath of office and entered into an agreement to serve for one year unless sooner relieved by the government or unless the period of service was extended by written agreement.

Within the decisions that appointment by the head of a department, as provided in the Constitution, Article 2, Section 2, Clause 2, to a position involving tenure, duration, continuing emolument and continuous duties renders one an officer of the United States, the court is without jurisdiction under the Tucker Act of the actions brought by plaintiffs for compensation for official services. United States v. Hartwell, 6 Wall. 385, 393, 73 U.S. 385, 393, 18 L.Ed. 830 (clerk in office of Assistant Treasurer of United States); Kennedy v. United States, 5 Cir., 146 F.2d 26, 28 (junior instructor of shop mathematics of the Air Corps); Hoeppel v. United States, 66 App.D.C. 71, 85 F.2d 237, 241, certiorari denied 299 U.S. 557, 57 S.Ct. 19, 81 L.Ed. 410 (West Point cadet); McGrath v. United States, 2 Cir., 275 F. 294, 300, 301, appeal dismissed 260 U.S. 709, 43 S.Ct. 249,

67 L.Ed. 475 (income tax inspectors). See United States v. Mouat, 124 U.S. 303, 307, 8 S.Ct. 505, 31 L.Ed. 463.

■ However this may be, plaintiffs could not prevail on the merits in this court in any event. They received compensation from appropriated funds in accordance with the following provision of their agreements with the government: "The Employee * * * agrees to serve on a vessel owned, operated, chartered, employed or controlled by the War Department at any post of duty in the world to be determined by the Government to which he may be assigned, for a period of One Year from the effective date of arrival at the European T. O., unless sooner relieved at the pleasure of the Government. From the effective date of this contract, the Employee agrees to serve at the minimum rate of * * * Dollars per annum which shall be considered the base wages of the Employee and in addition thereto the Employee shall be paid such additional increases in wages as may be prescribed by competent War Department authority for and on account of the war risk bonuses which are predicated upon transit of areas of risk and the prevailing wage practice of the maritime industry which the War Department is committed to follow as nearly as is practicable under its policy of conforming with the prevailing maritime practice. It is hereby agreed and understood that in accord with the prevailing maritime wage practices as presently approved and adopted by the War Department for the area to which the Employee is assigned, the Employee will be paid in addition to the base wages stipulated above, a flat increase in wages of One Hundred per cent (100%) to be paid upon arrival of the Employee at the European T. O., the assigned post of duty or upon assignment of the Employee to the vessel to be delivered to the assigned post of duty." The shipping articles under which plaintiffs sailed contained a rider stating: "E. T. O. men to be paid 100% bonus according to terms of contract."

■ The agreements are not ambiguous. They provide that only such increases would be given as would be prescribed by competent War Department authority. There is no evidence that any such authority prescribed any increase over that which was paid and accepted by the plaintiffs.

Moreover, the agreements refer to war risk bonuses which are predicated upon "transit" of areas of risk which in the opinion of the War Department, as well as in the opinion of the court excluded any bonuses predicated upon any continuous duty at assigned overseas posts. Defendant introduced testimony that no bonus was ever paid under such agreements.

■ The agreements refer to war risk bonuses which are predicated upon the prevailing wage practice of the maritime industry. The documents offered in evidence, as to which the court withheld its decision, are received in evidence. They principally refer to decisions of the Maritime War Emergency Board. These were not binding on the War Department which never became a signatory to the Statement of Principles providing for the creation of the Board. Under such decisions the five dollars per day area bonus was to commence "as of midnight prior to the day during which the vessel enters the area and shall cease at midnight of the day during which the vessel departs from the area." Maritime War Emergency Board Decision 2B, Article V. A. Area Bonus. Obviously this refers only to personnel of ships regularly engaged in voyages through areas of risk and not to personnel of vessels permanently assigned to a post of duty in a designated area.

■ The agreements also provide: "The provisions herein contained shall be deemed to include and be the equivalent of the prevailing employment conditions in the maritime industry." In response to an inquiry by the chief of the Civilian Personnel Division of the Army Transportation Corps, dated December 6, 1943, as to whether "there are any comparable commercial operations in the European Theatre of Operations" to the quasi-military operations of small vessels permanently assigned in the European Theatre, the Maritime War Emergency Board responded that "there are no comparable commercial operations in the European Theatre of Operations on the type of vessel and the type of mission to

which you advise the War Department vessels and crews are to be assigned."

The complaints accordingly must be dismissed.