NORTHEAST BANCORP, INC. and
Richard D. McDaniel, Petitioners,

v.

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM,
Respondent.

No. 87–1365.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 28, 1988.
Decided June 21, 1988.

C. Westbrook Murphy, Washington, D.C., for petitioners.

Robert D. McGillicuddy, Atty., Bd. of Governors of the Federal Reserve System, with whom Richard K. Willard, Asst. Atty. Gen., and Richard Ashton, Associate Gen. Counsel, Bd. of Governors of the Federal Reserve System, Washington, D.C., were on the brief, for respondent.

Before SILBERMAN and WILLIAMS, Circuit Judges, and DAVIS,* Circuit Judge, United States Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

In July of 1987, the Board of Governors of the Federal Reserve System, which oversees bank holding companies, approved the application of Northeast Bancorp, Inc. to become a bank holding company by acquiring eighty percent or more of the outstanding voting shares of First National Bank of North East (the "Bank"), in North East, Maryland. In separate letters to Northeast and to Richard D. McDaniel, however, the Board indicated its order of approval was contingent upon Northeast's earlier letter to the Board indicating McDaniel would not serve as an officer, director, or employee of Northeast. In the

* Circuit Judge Davis, sitting by designation pursuant to 28 U.S.C. § 291(a), did not participate in this decision.

Board's view, McDaniel's preclusion was compelled by a Consent and Stipulation between McDaniel and the Comptroller of the Currency, under which McDaniel's participation in the affairs of the Bank was generally prohibited. The Board concluded the stipulation was a removal order and that the Federal Deposit Insurance Act, 12 U.S. C. §§ 1811–1831d (1982), made such a removal automatically applicable to participation in the affairs of a bank holding company. McDaniel and Northeast seek review of this condition the Board placed on approval. We uphold the Board's interpretation of both the Consent and Stipulation and the Federal Deposit Insurance Act. We therefore deny the petition for review.

## I.

In the course of a routine examination of First National Bank of North East in 1983, the Office of the Comptroller of the Currency, the regulatory agency in charge of national banks, 12 U.S.C. § 1813(q)(1), found evidence that Richard D. McDaniel had participated in a number of transactions with the Bank that violated banking laws. The Comptroller consequently initiated proceedings against McDaniel, seeking to remove him from his positions as Chairman of the Board and Chief Executive Officer of the Bank, and to impose civil fines on him. Those proceedings were terminated when McDaniel and the Comptroller reached a settlement in May of 1986.

The Consent and Stipulation embodying that agreement stated it was entered into "before the adjudication or finding on any issue of fact or law and without McDaniel admitting or denying any wrongdoing" and that McDaniel waived his rights to hearing, findings of fact, and judicial review in relation to the Consent and Stipulation. It provided in part that McDaniel would retire from his officer and director positions by April 30, 1987, that as of that date he would not "participate in the conduct of the affairs" of the Bank except in a limited advisory capacity, that he would not vote for directors of the Bank, and that he

would pay a fine of $7,500. The Consent and Stipulation further provided:

> The Comptroller agrees *not* to interpose an objection to Bank's application to form a bank holding company as that term is defined in 12 U.S.C. § 1841, or to McDaniel's service as a director, officer, or employee, or participation in the conduct of the affairs of a bank holding company. (emphasis added).

But McDaniel agreed that the prohibitions of his participation in the affairs of the Bank would be "enforceable against McDaniel to the same extent as a final Order issued pursuant to 12 U.S.C. §§ [sic] 1818(e)."

In March of 1986, before entry of the Consent and Stipulation, Northeast had submitted to the Board of Governors an application—naming McDaniel as Chairman and President—to become a bank holding company and acquire the shares of the Bank. *See* 12 U.S.C. § 1842(a). The Board requested and received the full administrative record of the Comptroller's proceedings. The Board then informed Northeast that it considered the Consent and Stipulation a removal order pursuant to 12 U.S.C. § 1818(e), which allows the Comptroller to remove directors or officers of national banks for violations of law or unsound practices. The Board therefore concluded that the agreement, together with the provisions of the Federal Deposit Insurance Act, barred McDaniel's participation in the bank holding company. Northeast disagreed, acknowledging that the Board had authority under section 1818(e) to remove an officer or director of a bank holding company, but contending the Board was required in such circumstances to proceed independently, providing notice and hearing as required by that statute, rather than relying on "an unproved allegation by another federal bank agency or the terms of a settlement agreement." Northeast nevertheless amended its application, striking McDaniel's name.

The Board expressed dissatisfaction with this modification, since it did not preclude McDaniel's future involvement. Northeast and McDaniel replied they were not "inter-

ested in putting any restrictions" on McDaniel's involvement, and requested that the Board continue its review of the application. The Board thereafter issued an order approving the application, 73 Fed. Res.Bull. 725, pursuant to its authority under the Bank Holding Company Act, 12 U.S.C. §§ 1841–1850, on July 2, 1987. Although the order did not refer to McDaniel, the Board did inform Northeast and McDaniel by separate letters that the approval was conditioned on Northeast's amendment of its application excluding McDaniel.[1] The Board's imposition of its condition—that McDaniel take no part in the affairs of the bank holding company— is based on two separate assertions of legal authority. The first is the Board's duty under the Bank Holding Company Act when entertaining applications to "take into consideration the financial and managerial resources and future prospects of the company or companies and the banks concerned, and the convenience and needs of the community to be served." 12 U.S.C. § 1842(c). The Board also, however, relies on the independent legal effect of the Consent and Stipulation, which it treats as a Comptroller's removal order under section 1818(e)(5) and which, pursuant to section 1818(j)(ii), therefore forbids McDaniel's service as a director, officer, or employee of any bank without "prior written approval of *the appropriate* Federal banking agency." (emphasis added). According to the Board, an amendment to section 1818(b)(3) applies section 1818(j) to bank holding companies and thereby precludes McDaniel's service as an officer of a bank holding company without the Board's approval (just as prior to its passage a person subject to a Comptroller's removal order would have been barred from service as an officer of a

state member bank without approval of the Board).

Petitioners assert that a Comptroller's order removing a bank officer does not automatically bar the order's target from service as a bank holding company officer. The Board must, according to petitioners, grant the subject a hearing and, based on that hearing, issue its own removal order. Even if the Board were correct as to its interpretation of the interrelationship between the statutes, petitioners alternatively maintain that the Consent and Stipulation is not a section 1818(e)(5) removal order.

## II.

■ We consider first the question of statutory interpretation (assuming for purposes of analysis that the stipulation is properly regarded as a removal order). The Comptroller of the Currency has responsibility for regulation of federally chartered banks, the FDIC for state banks not members of the Federal Reserve System but which are federally insured, and the Federal Reserve Board for state banks which are insured and are members of the system. 12 U.S.C. § 1813(q). In addition, the Board, under the Bank Holding Company Act, exercises sole regulatory authority over bank holding companies, which control banks or other bank holding companies. *See* 12 U.S.C. §§ 1841–1850. It is undisputed that a removal order pursuant to section 1818(e)(5), issued by any one of the three federal regulators and directed at a bank officer, automatically precludes that officer from service at a *bank* regulated by either of the other two without the express written approval of the relevant regulator. *See* 12 U.S.C. § 1818(j).[2] Petitioners contend,

---

**1.** Although these letters were not labelled "orders," they are clearly a binding portion of the Board's action on Northeast's application, conditions imposed as part of the Board's duty to consider bank holding company applications under 12 U.S.C. § 1842(c). As such, the letters constitute an order. *See Investment Co. Inst. v. Board of Governors*, 551 F.2d 1270, 1278 (D.C. Cir.1977). And, as we explain, to the extent they are an order under the Bank Holding Company Act, they are reviewable under 12 U.S.C. § 1848.

**2.** Section 1818(j) provides in full:

Any director or officer, or former director or officer of an insured bank, or any other person, against whom there is outstanding and effective any notice or order (which is an order which has become final) served upon such director, officer, or other person under subsections (e)(4), (e)(5), or (g) of this section, and who (i) participates in any manner in the conduct of the affairs of the bank involved, or directly or indirectly solicits or procures, or transfers or attempts to transfer, or votes or

however, that this bar, which carries a criminal penalty, does not apply to service as a bank holding company officer. The dispute between petitioners and the Board turns then on the interpretation of an amendment to section 1818(b)(3) which extends a number of provisions of the Federal Deposit Insurance Act, including subsection (j), to apply to bank holding companies "in the same manner as they apply to a state member insured bank" (a state member insured bank is, it will be recalled, regulated by the Federal Reserve Board).[3]

Petitioners argue that this amendment only conferred power on the Board to *remove* bank holding company officers, a power that prior to the amendment the Board lacked. Petitioners rely on the House Report that accompanied the amendment, which described the amendment as designed to "extend the removal powers of the Board under the Financial Institutions Supervisory Act to bank holding companies and their nonbank subsidiaries." H.R. REP. NO. 1383, 95th Cong., 2d Sess. 41 (1978), U.S.Code Cong. & Admin.News 1978, 9273, 9313. The difficulty with petitioners' argument, it seems to us, is that the House Report surely explains the most important impact of the amendment, but it

hardly negates the Board's obvious and literal interpretation of another effect of the language. If Congress had intended its amendment of (b)(3) *only* to provide the Board direct removal authority over bank holding company officers, and *not* to prohibit a removed bank employee's participation in bank holding companies,[4] it would not have explicitly referred to subsection (j) without any modification; it would instead have included a reference to subsection (e), the direct removal provision, along with a modified (j) that would make it a crime for a bank holding company officer subject to a removal order from the Board nonetheless to continue serving as an officer of that or any other bank holding company (or of any bank), but would allow removed bank officers to serve with bank holding companies.[5] Nor have petitioners suggested any persuasive reason why Congress would not have wished the automatic removal provision to apply to bank holding company officers. Otherwise, the Board itself, were it dealing with a state member bank officer, would be obliged to conduct two full removal proceedings to bar the officer from both the bank and the bank holding company. Petitioners rely essentially on the proposition that since subsection (j) is a criminal statute its extension

attempts to vote, any proxies, consents, or authorizations in respect of any voting rights in such bank, or (ii) without the prior written approval of the appropriate Federal banking agency, votes for a director, serves or acts as a director, officer, or employee of any bank, shall upon conviction be fined not more than $5,000 or imprisoned for not more than one year, or both.

3. The full text of subsection (b)(3):

This subsection and subsections (c) through (f) and (h) through (n) of this section shall apply to any bank holding company, and to any subsidiary (other than a bank) of a bank holding company, as those terms are defined in the Bank Holding Company Act of 1956 [12 U.S.C. 1841 et seq.], and to any organization organized and operated under section 25(a) of the Federal Reserve Act [12 U.S.C. 611 et seq.] or operating under section 25 of the Federal Reserve Act [12 U.S.C. 601 et seq.], in the same manner as they apply to a State member insured bank. Nothing in this subsection or in subsection (c) of this section shall authorize any Federal banking agency, other than the Board of Governors of the Federal Reserve System, to issue a notice of charges or

cease-and-desist order against a bank holding company or any subsidiary thereof (other than a bank or subsidiary of that bank).

4. It is apparently not disputed that a Board removal order directed to a bank holding company officer would automatically preclude the target's service as a bank officer.

5. This complexity stems from the service of the word "bank," which subsection (b)(3) affects, in two separate capacities in subsection (j). In subdivision (i) of subsection (j), "bank" refers only to the financial institution from which the officer was removed. In petitioners' view, only this occurrence of the word should be seen as modified by subsection (b)(3), to provide a criminal penalty for direct violation of a removal order from a bank holding company. Petitioners provide no support to indicate Congress did not intend subsection (b)(3) also to extend to the second use of "bank" in subsection (j), after subdivision (ii), which extends the prohibitions of the removal order beyond the financial institution directly involved. If Congress had intended to draw this line, it would have treated subsection (j) differently.

should be strictly construed. Even so, we think the Board's interpretation is correct; the literal language of the amendment supports the Board and nothing in the legislative history or the purpose of the legislation as revealed by its structure casts doubt on the Board's interpretation.[6] Narrow construction of penal statutes is not inconsistent with allowing a statute to have "the more extended of two meanings," if that meaning is consistent with legislative purpose. *United States v. Conlon*, 628 F.2d 150, 154 (D.C.Cir.1980) (quoting *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 396, 18 L.Ed. 830 (1868)).

### III.

 The more difficult question presented is whether it was appropriate for the Board to treat the Consent and Stipulation as a section 1818(e)(5) removal order of the Comptroller.[7] Petitioners first suggest that the settlement is not literally an order *after hearing* as contemplated by the subsection. We find that interpretation of section 1818(e)(5) unreasonable, for it would discourage settlements and might require a bank regulatory agency to proceed to hearing even if the respondent were willing to agree to the order sought. Indeed, subsection (e)(5) explicitly contemplates a consent to an order by failing to appear or failing to contest the order. We think an agreed upon Consent and Stipulation is implicitly authorized by that language even if it were not otherwise contemplated by common practice. *See* 5 U.S.C. § 554(c). Petitioners then argue (not without surface appeal) that the language in the settlement agreement, stating that the Comptroller would not object to McDaniel's participation in a bank holding company, is implicitly violated if the agreement is interpreted automatically, by virtue of section 1818(j), to bar McDaniel's participation in a bank holding company. But petitioners' argument would be persuasive only if the Comptroller had power to limit the effect of his removal order as it applied to McDaniel's service as a bank (or bank holding company) officer in an institution regulated by one of the other two federal bank regulatory agencies. The Comptroller, in our view, has no such power. If the Comptroller removes a federal bank officer, he cannot circumvent section 1818(j)'s obvious purpose by merely stating that this removal does not prejudice the officer's continued service in an institution

---

6. Because we agree with the Board that removed bank officers are, absent permission, statutorily barred from service with a bank holding company, petitioners' constitutional argument—that McDaniel has been deprived of his interest in serving with Northeast without being afforded due process—is beside the point. A full hearing was available to McDaniel in the Comptroller's original removal proceeding, but he waived it.

7. 12 U.S.C. § 1818(e)(5):

A notice of intention to remove a director, officer, or other person from office or to prohibit his participation in the conduct of the affairs of an insured bank, shall contain a statement of the facts constituting grounds therefor, and shall fix a time and place at which a hearing will be held thereon. Such hearing shall be fixed for a date not earlier than thirty days nor later than sixty days after the date of service of such notice, unless an earlier or a later date is set by the agency at the request of (A) such director or officer or other person, and for good cause shown, or (B) the Attorney General of the United States. Unless such director, officer, or other person shall appear at the hearing in person or by a duly authorized representative, he shall be deemed to have consented to the issuance of an order of such removal or prohibition. In the event of such consent, or if upon the record made at any such hearing the agency shall find that any of the grounds specified in such notice have been established, the agency may issue such orders of suspension or removal from office, or prohibition from participation in the conduct of the affairs of the bank, as it may deem appropriate. In any action brought under this section by the Comptroller of the Currency in respect to any director, officer or other person with respect to a national banking association or a District bank, the findings and conclusions of the Administrative Law Judge shall be certified to the Board of Governors of the Federal Reserve System for the determination of whether any order shall issue. Any such order shall become effective at the expiration of thirty days after service upon such bank and the director, officer, or other person concerned (except in the case of an order issued upon consent, which shall become effective at the time specified therein). Such order shall remain effective and enforceable except to such extent as it is stayed, modified, terminated, or set aside by action of the agency or a reviewing court.

regulated by the FDIC or the Federal Reserve Board. Section 1818(j) is specifically designed to extend across regulatory jurisdictional lines, *by operation of statute*, the effect of a removal order issued by one of the bank regulatory agencies. Only the bank regulatory agency or agencies with regulatory responsibility for the affected institution may give written permission for the subject of the removal order to continue his service. In this case, with respect to McDaniel's service as a Northeast officer, that agency is the Federal Reserve Board —not the Comptroller. The Comptroller's promise not to object to McDaniel's service as a bank holding company officer was not utterly without significance, however, since under subsection (j) the Board's discretion to determine whether or not to permit McDaniel's service as a bank holding company officer could be influenced by the Comptroller's position.[8]

Finally, McDaniel and Northeast claim that the settlement agreement differs from a section 1818(e)(5) removal order because it specifically allows McDaniel to act as a consultant to a financial institution. Nothing in section 1818(e)(5) requires a federal bank regulatory agency to prohibit *all* contact with a regulated institution for its order be characterized as a removal order. The regulatory agency surely does not in every case have to exercise the full extent of its power under subsection (e)(5). Of course, not every restriction imposed on a bank officer or director is a removal order under 1818(e)(5),[9] but this Consent and Stipulation, which requires that McDaniel abandon his positions as officer and director, can hardly be characterized as other than providing for his "removal" within the meaning of that subsection. Under the statutory scheme, once the order is charac-

terized properly as a removal, the extent of a removed officer's or director's subsequent participation with a financial institution regulated by another agency is a matter to be determined by that other agency under section 1818(j). Nothing, it should be noted, prevents a party wishing to settle with one agency from determining in advance what the consequences would be at another agency or indeed entering into a joint settlement with two or even all three agencies.

\* \* \* \* \* \*

The Board did not explicitly exercise its discretion under subsection (j) to determine whether or not it would permit McDaniel to serve in any capacity in the bank holding company, perhaps because McDaniel did not ask for relief under that section. Instead, it conditioned its approval of Northeast's application by insisting McDaniel not serve as director, officer, or employee of the applicant or vote for directors. We have jurisdiction to review Board orders under the Bank Holding Company Act, 12 U.S.C. § 1848, but it is not at all clear that we would have jurisdiction to review a Board, FDIC, or Comptroller exercise of discretion under section 1818(j) since section 1818(i)(1) bars judicial review of section 1818 orders "except as otherwise provided." The main subsection that so provides is subsection (h), which links judicial review to orders that follow hearings. *See also* 12 U.S.C. § 1818(i)(2)(iv). And no hearing is required when a bank regulatory agency determines under (j) whether it will relieve the consequences of an (e)(5) removal order issued by another bank regulatory agency. Therefore, even assuming the Board has not formally exercised its discretion under (j), we think a remand inappropriate. We probably could not direct the Board to exercise discretion on a matter if

---

**8.** The Comptroller has the option under 12 U.S.C. § 1842(b) of the Bank Holding Company Act to comment on a pending application before the Federal Reserve Board. To be sure, his promise not to do so in this case—given the Board's (and perhaps the Comptroller's) interpretation of (j) —did not affect the Board's outcome, but neither counsel for the Comptroller, nor for that matter counsel for McDaniel, could be certain as to how the Board would interpret subsection (j) or whether we would affirm that interpretation.

**9.** It is doubtful that a cease and desist order, which only arguably constituted a removal order, could be so treated, since a violation of subsection (j) carries a criminal penalty. On the other hand, a target of the order can always seek guidance as to the views of the relevant bank regulatory agency by asking for relief under that subsection from an order's impact across jurisdictional lines.

we totally lacked jurisdiction over that matter.[10] In any event, a remand seems unnecessary since nothing prevents McDaniel from requesting relief of some form under that subsection.[11] Accordingly, the petition for review is

*Denied.*

---

**10.** As it would appear at least in the absence of an equal protection claim.

**11.** Since we affirm the Board's interpretation of 1818(j), it is unnecessary to decide the propriety of the Board's alternative ground for conditioning its approval of Northeast's application on McDaniel's nonparticipation. In its letters to McDaniel and Northeast, the Board, in addition to relying on its statutory interpretation, observed that the Consent and Stipulation by its own terms forbade participation by McDaniel in the conduct of the "affairs of the Bank." Since Northeast existed solely to manage and control the Bank the Board reasoned, the Consent and Stipulation directly barred McDaniel's service as an officer or director of Northeast. The difficulty with that theory, we note in passing, is that the Comptroller does not appear to have power to regulate the activities of bank holding companies or their officers, so it is hard to understand how the Board could interpret the Comptroller's order to affect McDaniel's service as a bank holding company official in the absence of section 1818(j).

By the same token, we need not decide whether the Board could draw upon the Consent and Stipulation as a basis to condition its approval of Northeast's application under section 1842, either independently of section 1818(j) or in light of it. (Of course, section 1818(j) is a criminal statute, but the bank regulatory agencies civilly enforce section 21 of the Glass–Steagall Act and might by analogy be entitled to consider the effect of section 1818(j) in a section 1842 proceeding. *See Investment Co. Institute v. FDIC,* 815 F.2d 1540, 1545 (D.C.Cir.1987) (per curiam).) We do note that 12 U.S.C. § 1842(b) obliges the Board to give an applicant a hearing if the Comptroller objects. That surely suggests that the Comptroller's objection, or indeed any comment about an officer of a bank who is part of a group seeking a bank holding company charter, must be on the record; the Comptroller could not provide private information to the Board about the activities of a bank officer in the context of a section 1842 application. It therefore seems doubtful that the Board could, without affording McDaniel a hearing, properly rely directly on the terms of the Consent and Stipulation to exclude McDaniel *pursuant to 1842(b).* To be sure, the Board did obtain the *record* of the Comptroller's proceedings against McDaniel, but that does not constitute a section 1842(b) objection and, in any event, the materials available to the Board in its examination of a request for a waiver *under section 1818(j)* are not statutorily limited.