(Slip Opinion)

# Appointment and Removal of Federal Reserve Bank Members of the Federal Open Market Committee

The statutory procedures for appointing and removing Federal Reserve Bank members of the Federal Open Market Committee are consistent with the Constitution, and would have continued to be so under proposed H.R. 6741, the Federal Reserve Reform Act of 2018.

October 23, 2019

MEMORANDUM OPINION FOR THE
ASSISTANT ATTORNEY GENERAL
OFFICE OF LEGISLATIVE AFFAIRS

This memorandum memorializes our review of the constitutionality of an amendment in the nature of a substitute to H.R. 6741, the Federal Reserve Reform Act of 2018, which would have expanded the authority of the Federal Open Market Committee ("FOMC") and changed its structure for the first time in decades. The bill was reported as amended by the U.S. House Committee on Financial Services in the 115th Congress, but was not enacted. The FOMC is part of the Federal Reserve System and directs U.S. monetary policy, principally by setting the target for the "federal funds rate"—the interest rate at which banks lend money to one another overnight. Sections 4(1)(B) and 5 of H.R. 6741 would have permitted the FOMC to authorize emergency lending and to set the interest rate on certain reserves maintained on behalf of financial institutions. Sections 6 and 8 would have amended the membership of the FOMC and the process for selecting its members.

Currently, the FOMC consists of twelve members—the seven members of the Federal Reserve System's Board of Governors, a member drawn from the Federal Reserve Bank of New York, and four members drawn from geographical groups of other regional Federal Reserve Banks, who serve one-year terms on the FOMC on a rotating basis. Each of the five Reserve Bank members must be either a president or first vice president of a Reserve Bank. A Reserve Bank president or first vice president is selected by a subset of directors of the Reserve Bank, subject to the approval of the Board of Governors, and then may be designated to serve on the FOMC by the full membership of the combined boards of directors of the Reserve Banks in the geographical group to which the Reserve Bank belongs. Like any other Reserve Bank president or first vice president,

1

Reserve Bank FOMC members may be removed from their Reserve Bank positions either by the Board of Governors or by the boards of directors of their respective Reserve Banks, which in turn would have the effect of removing the president or first vice president from the FOMC.

The structure of the FOMC has long raised constitutional questions. In 1986, a district court considered, although ultimately rejected, an Appointments Clause challenge to the FOMC's structure. *See Melcher v. FOMC*, 644 F. Supp. 510 (D.D.C. 1986), *aff'd on other grounds*, 836 F.2d 561 (D.C. Cir. 1987). But H.R. 6741 would have heightened Appointments Clause concerns with the FOMC's structure by increasing the authority of the FOMC's Reserve Bank members. We thus considered the constitutionality both of the FOMC's basic structure as it exists today and of the changes the proposed legislation would have made to that framework.

We concluded that Reserve Bank representatives on the FOMC are "Officers of the United States" under the Appointments Clause. U.S. Const. art. II, § 2, cl. 2. More specifically, they are "inferior Officers" who are appointed to their Reserve Bank positions by the "Head[] of [their] Department[]," *id.*—the Board of Governors of the Federal Reserve System, which approves their appointments as Reserve Bank presidents or first vice presidents. Their appointments as Reserve Bank presidents or first vice presidents make them eligible for service as members of the FOMC, even though the boards of directors that select them for FOMC membership may not make appointments under the Appointments Clause. Because the duties of Reserve Bank presidents and first vice presidents are germane to the duties of FOMC members, those officers may serve on the FOMC on the strength of the Governors' approval of their earlier appointments.

We also concluded that the procedures for removing Reserve Bank FOMC members are constitutional. Reserve Bank FOMC members are subject to plenary removal and supervision by the Board of Governors, which tracks the default rule that an officer is subject to removal at will by the appointing official. Under the statute, Reserve Bank FOMC members may also be removed from their underlying bank positions by the Reserve Bank boards of directors. But this additional removal authority does not unconstitutionally interfere with the removal authority of the Board of Governors, because the statute can be read and administered to

require the Board to approve any removal of an FOMC Reserve Bank member.

For these reasons, we concluded that the basic structure of the FOMC is constitutional, both as it exists today and as it would have been amended by H.R. 6741. This memorandum memorializes our reasoning in support of those conclusions.[1]

## I.

The Federal Reserve System consists of three overlapping entities: the Board of Governors, the twelve regional Federal Reserve Banks, and the FOMC. The Board of Governors has seven members, who are appointed by the President to fourteen-year terms with the advice and consent of the Senate. 12 U.S.C. §§ 241–242. The Board oversees the operations of the regional Reserve Banks, including by setting policies for Reserve Banks' lending of money to private banks and provision of other financial services. The Board also regulates certain private financial institutions and activities. For instance, the Board imposes notice and reporting requirements, establishes capital requirements and leverage limits for financial institutions, and conducts stress tests to ensure that those institutions have sufficient capital to survive under adverse economic conditions. *See, e.g.*, *id.* §§ 248–248b, 5361–5374.

The twelve regional Federal Reserve Banks execute the Federal Reserve System's policies. The Reserve Banks are owned by member commercial banks within their regional districts. *Id.* § 341. Each Reserve Bank is overseen by its own board of directors and operated on a day-to-day basis by a president and one or more vice presidents. *Id.* Among other functions, Reserve Banks review the soundness of financial institutions, including state depository institutions; serve as "bank[s] for banks" by offering lending and payment services to other financial institutions; execute orders to buy and sell government securities; and gather information used to formulate national monetary policy. *See* Board of Governors of the Federal Reserve System, *The Federal Reserve System: Purposes & Functions* 13–14 (10th ed. Oct. 2016) ("*Federal Reserve*

---

[1] In preparing this opinion, we consulted with the Office of the General Counsel of the Department of the Treasury and with the Office of the General Counsel of the Federal Reserve System Board of Governors.

*System*"), https://www.federalreserve.gov/aboutthefed/files/pf_complete.
pdf.

The FOMC, in turn, oversees the Federal Reserve System's "open market operations"—that is, "the purchase and sale of Government securities in the domestic securities market," through which the Federal Reserve System expands or contracts the supply of money in the United States. *FOMC v. Merrill*, 443 U.S. 340, 343 (1979); *see* 12 U.S.C. § 263; *Federal Reserve System* at 15–17, 20–32. To increase the money supply, the FOMC directs purchases of federal securities from banks; the proceeds of those purchases increase the banks' cash reserves. *Merrill*, 443 U.S. at 343. Conversely, to decrease the money supply, the FOMC directs sales of securities, thereby decreasing banks' reserves. *Id.* at 343–44. This change in reserve volume affects the amounts of money that banks may loan and invest. When banks have more money to loan, the interest rates on loans become lower and borrowers enjoy cheaper access to capital. When banks have less money, the interest rates on loans become higher. This ease or difficulty of access to capital has a "substantial impact" on "investment activity in the economy as a whole," *id.*, which is why these "open market operations . . . are the most important monetary policy instrument of the Federal Reserve System," *id.* at 343; *see also Federal Reserve System* at 32–38.

The FOMC directs open-market operations primarily by setting the target for the federal funds rate. The FOMC executes that decision by directing the Federal Reserve Bank of New York to purchase or sell government securities until the federal funds rate meets the target. *See Federal Reserve System* at 32–38; David Zaring, *Law and Custom on the Federal Open Market Committee*, 78 Law & Contemp. Probs. 157, 163 (2015). In response to the financial crisis that began in 2007, the FOMC also employed other, less traditional monetary policy tools, such as directing the purchase of longer-term securities to place downward pressure on long-term interest rates. *See Federal Reserve System* at 21–22. H.R. 6741 would have expanded the FOMC's authority further. It would have required decisions of the Board of Governors to authorize emergency lending to be approved by a two-thirds vote of the FOMC (as well as the Secretary of the Treasury) and would have authorized the FOMC to set the interest rate on balances held by Reserve Banks as part of commercial banks' required reserves. H.R. 6741, sec. 4(1)(B), § 343(3)(A); *id.* sec. 5, § 461(b)(12)(A).

The FOMC consists of the Board of Governors and representatives of the regional Reserve Banks. The seven Governors of the Federal Reserve System hold positions on the FOMC for their entire fourteen-year terms as Governors. 12 U.S.C. §§ 241–242, 263. The remaining five FOMC members are the president of the New York Federal Reserve Bank and the presidents of four other regional Reserve Banks, each of whom serves a one-year term on the FOMC. *Id.* § 263(a).[2] Each Reserve Bank president is initially selected to his Reserve Bank position by two classes of the directors of that Reserve Bank, with the approval of the Board of Governors, for a five-year term. *Id.* §§ 304, 305, 341. The full membership of the combined boards of directors of the Reserve Banks in each regional group, *see supra* note 2, then selects the FOMC member who will represent that regional group, 12 U.S.C. § 263(a). H.R. 6741 would have amended the membership of the FOMC to include the presidents of all twelve Reserve Banks, bringing the FOMC's total membership to nineteen. H.R. 6741, sec. 6, § 263(a). H.R. 6741 would also have amended the underlying method of appointment to the position of Reserve Bank president. Under the proposed legislation, the president of each Reserve Bank would have been selected by the Reserve Bank's entire board of directors instead of by only two classes of its directors. *Id.*, sec. 8, § 341. Each appointment of a Reserve Bank president would have remained subject to the approval of the Board of Governors. *Id.*

There are two methods of removing Reserve Bank presidents. First, the Board of Governors may "suspend or remove any officer or director of any Federal reserve bank," so long as it communicates "the cause of such removal . . . in writing . . . to the removed officer or director and to said bank." 12 U.S.C. § 248(f). Second, the board of directors of an individual

---

[2] The remaining four Reserve Bank members typically include, on a rotating basis, one of the presidents of the Reserve Banks of Boston, Philadelphia, and Richmond; one of the presidents of the Reserve Banks of Cleveland and Chicago; one of the presidents of the Reserve Banks of Atlanta, Dallas, and St. Louis; and one of the presidents of the Reserve Banks of Minneapolis, Kansas City, and San Francisco. *See* 12 U.S.C. § 263(a). In addition to the Reserve Bank presidents, the statute provides that the first vice president of each Reserve Bank is also eligible for appointment to the FOMC, *id.*, and H.R. 6741 would have continued to render them eligible to represent the Reserve Banks on the FOMC, H.R. 6741, sec. 6, § 263(a). Because the first vice presidents are appointed and removed in the same way as the Reserve Bank presidents, *see* 12 U.S.C. § 341, there is no difference in the relevant constitutional analysis, so we refer in this opinion simply to Reserve Bank presidents, the officials who typically serve on the FOMC.

Reserve Bank may dismiss the Reserve Bank's officers "at pleasure." *Id.* § 341. Because the Reserve Bank presidents participate on the FOMC as representatives of their regional banks, removal from their positions as Reserve Bank presidents strips them of their duties on the FOMC as well. *See id.* § 263(a) (Reserve Bank FOMC members "shall be presidents or first vice presidents of Federal Reserve banks").

## II.

The Appointments Clause of the Constitution, U.S. Const. art. II, § 2, cl. 2, provides the exclusive means of appointing "Officers of the United States." Principal officers must be nominated and appointed by the President with the advice and consent of the Senate. *Id.* Inferior officers must be appointed in the same manner, unless Congress by law vests their appointment in the President, the head of a department, or a court of law. *Id.* We conclude that Reserve Bank presidents serving on the FOMC are inferior officers of the United States. Congress has constitutionally provided for their appointments by requiring the approval of the selection of a Reserve Bank president by the Board of Governors, the constitutional head of the Federal Reserve System.

## A.

FOMC members, including Reserve Bank members, have authority that may be exercised only by officers of the United States who are appointed in conformity with the Appointments Clause. That is because each member (1) "'exercis[es] significant authority pursuant to the laws of the United States'" and (2) "occup[ies] a 'continuing position' established by law." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (quoting *United States v. Germaine*, 99 U.S. (9 Otto) 508, 511 (1879); *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)); *see also Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 122 (2007) ("*Officers of the United States*") ("[A]n individual who will occupy a position to which has been delegated by legal authority a portion of the sovereign powers of the federal government, and which is 'continuing,' must be appointed pursuant to the Appointments [C]lause.").

The members of the FOMC satisfy the first aspect of the test for officer status because they exercise significant authority pursuant to the laws of the United States. *See Lucia*, 138 S. Ct. at 2051; *Officers of the*

*United States*, 31 Op. O.L.C. at 78. The FOMC sets the government's monetary policy by ordering open-market transactions on the government's behalf, which is "the most important monetary policy instrument" of the United States. *Merrill*, 443 U.S. at 343. To implement that policy, the FOMC is empowered to order the Federal Reserve Bank of New York to buy or sell government securities. In addition, the FOMC exercises another form of sovereign authority: the power to make binding rules. *See Buckley*, 424 U.S. at 141; 12 U.S.C. § 263(b) (authorizing the FOMC to promulgate regulations that bind Reserve Banks). The FOMC has issued regulations governing the Reserve Banks' open-market operations, 12 C.F.R. §§ 270.1–.4, regulations regarding public access to information about FOMC proceedings, *id.* §§ 271.1–.9, and rules of procedure, *id.* §§ 272.1–.5. Such authority reflects "power lawfully conferred by the government to bind third parties, or the government itself, for the public benefit." *Officers of the United States*, 31 Op. O.L.C. at 87.

The FOMC's members satisfy the second aspect of the test for officer status because they occupy continuing positions established by law. *See Lucia*, 138 S. Ct. at 2051; *Officers of the United States*, 31 Op. O.L.C. at 100. A "continuing" position is one that is either a "permanent" position or a temporary position that is "not personal, 'transient,' or 'incidental.'" *Officers of the United States*, 31 Op. O.L.C. at 100. The FOMC is a permanent body with statutorily defined powers and duties. *See* Banking Act of 1933, Pub. L. No. 73-66, § 8, 48 Stat. 162, 168. Although the FOMC's Reserve Bank members serve on the FOMC for only one-year terms, 12 U.S.C. § 263(a), each Reserve Bank position on the FOMC is still permanent because the position itself, as opposed to its occupant, "is not limited by time or by being of such a nature that it will terminate by the very fact of performance." *Officers of the United States*, 31 Op. O.L.C. at 111 (internal quotation marks omitted).

In reaching this conclusion, we disagree with the district court in *Melcher v. FOMC*, which held that Reserve Bank members of the FOMC are not officers of the United States because they are "otherwise private individuals." 644 F. Supp. at 520. *Melcher* reasoned that Reserve Banks are private corporations and Reserve Bank FOMC members are "not appointed by or beholden to either branch of government." *Id.* at 518, 520. But we have rejected the premise that the Appointments Clause does not apply to appointments outside the federal government of officials who exercise permanently delegated federal statutory functions in continuing

positions. *See Officers of the United States*, 31 Op. O.L.C. at 121. *But see The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 145–48 (1996) ("*Separation of Powers*") (concluding that the Appointments Clause does not apply to private entities). And even if the Appointments Clause applies only to positions within the federal government, Reserve Bank presidents are assuredly federal officials *in their role as FOMC members*.[3] The FOMC, after all, is the statutorily created monetary-policy-making arm of the federal government. And Reserve Bank FOMC members are appointed (and may be removed at will) by the Board of Governors, *see infra* Parts II.B.2 and III, and therefore are "appointed by" and "beholden to" an establishment of the federal government. *Melcher*, 644 F. Supp. at 520. We thus think that the FOMC's Reserve Bank members serve in the federal government for constitutional purposes. They are officers of the United States who must be appointed under the Appointments Clause.

The fact that Reserve Bank members currently constitute only a minority on the FOMC does not bear on this conclusion. When federal sovereign authority is delegated to a body, all voting members of that body share in the authority; the officer status of some members does not turn on the presence of others who may outvote them. Otherwise, no single member would be an officer, despite the power of that body to collectively exercise significant authority. We have accordingly "viewed the power to cast

---

[3] We need not address whether the duties that Reserve Bank presidents perform, apart from membership on the FOMC, are otherwise so significant as to make them officers of the United States, or the constitutional status of the Reserve Banks more broadly. Although the Reserve Banks are established as private corporations, a statutory "disclaimer of . . . governmental status" does not control for constitutional purposes if the "practical reality" is that the entity "is not an autonomous private enterprise." *Dep't of Transp. v. Ass'n of Am. R.R.*, 135 S. Ct. 1225, 1232–33 (2015); *see also Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392–99 (1995). Reserve Banks exhibit some features of private enterprises, but they are fiscal agents of the United States empowered by delegation from the Board of Governors—an establishment of the federal government—to supervise financial institutions and activities. 12 U.S.C. § 248(k). Some courts thus have described Reserve Banks as "plainly and predominantly fiscal arms of the federal government." *Fed. Reserve Bank of Boston v. Comm'r of Corps. & Taxation*, 499 F.2d 60, 62 (1st Cir. 1974); *see Fed. Reserve Bank of St. Louis v. Metrocentre Imp. Dist.*, 657 F.2d 183, 186 (8th Cir. 1981). *But cf. Scott v. Fed. Reserve Bank of Kansas City*, 406 F.3d 532 (8th Cir. 2005) (considering Reserve Banks private entities for certain statutory purposes); *Lewis v. United States*, 680 F.2d 1239 (9th Cir. 1982) (same). We need not address these questions to conclude that members of the FOMC are officers of the United States.

a vote on executive functions, even if that vote itself is not decisive, as the exercise of significant authority." Memorandum for Daniel J. Bryant, Assistant Attorney General, Office of Legislative Affairs, from Sheldon Bradshaw, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Secure Transportation for America Act of 2001, H.R. 3150*, at 3 (Oct. 19, 2001) (noting that "the fact that the improperly appointed member of the Board would constitute a minority of the [Transportation Security Oversight] Board members would [not] cure any Appointments Clause concerns"). Moreover, H.R. 6741 would have increased the role of Reserve Bank members and made them the majority of the FOMC. The proposed legislation would have also required a two-thirds vote of the FOMC to approve a decision by the Board of Governors to authorize emergency lending. H.R. 6741 thus put the constitutional status of Reserve Bank FOMC members into stark relief.

## B.

Reserve Bank FOMC members are inferior officers under the Appointments Clause because they are subordinates of the Board of Governors. And the appointments of Reserve Bank FOMC members comport with the Appointments Clause. Their selections as Reserve Bank presidents are approved by the Board of Governors, which is the head of the Federal Reserve System and therefore may appoint inferior officers of the United States. U.S. Const. art. II, § 2, cl. 2. Although Reserve Bank FOMC members are designated to serve on the FOMC by officials who may not constitutionally appoint officers, the new duties that Reserve Bank presidents acquire as members of the FOMC are sufficiently germane to their underlying Reserve Bank positions that they may serve on the FOMC without new Article II appointments. That conclusion would have remained the same even under H.R. 6741.

## 1.

"Generally speaking, the term 'inferior officer' connotes a relationship with some higher ranking officer or officers below the President: Whether one is an 'inferior' officer depends on whether he has a superior." *Edmond v. United States*, 520 U.S. 651, 662 (1997). To decide whether an officer has a superior, the Supreme Court has considered whether the officer is subject to the policy direction of another official, whether the

officer can take "final" action without the approval of another officer, and whether an executive officer other than the President has the "power to remove [the] officer[]." *Id.* at 664–65.

An official who is invested with authority to make a final decision for the Executive Branch and who is not supervised by anyone other than the President is the prototypical principal officer. *See, e.g.*, *id.* at 663 ("'[I]nferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1339 (D.C. Cir. 2012) (concluding that copyright royalty judges were principal officers given their "nonremovability and the finality of their decisions"); *Secretary of Education Review of Administrative Law Judge Decisions*, 15 Op. O.L.C. 8, 14 & n.11 (1991) (concluding that an administrative law judge who enjoyed "tenure protection" and "whose decision could not be reviewed by the Secretary . . . would appear to be acting as a principal officer of the United States"). By contrast, an officer who lacks final decision-making authority and who may be removed by other officers is an inferior officer. *See, e.g.*, *Edmond*, 520 U.S. at 664–65 (concluding that certain military judges were inferior officers because they were subject to administrative oversight, were "remov[able] . . . without cause," and had "no power to render a final decision"); *see also Separation of Powers*, 20 Op. O.L.C. at 150 ("an officer who is subject to control and removal by an officer other than the President should be deemed presumptively inferior").[4]

---

[4] In *Morrison v. Olson*, 487 U.S. 654 (1988), the Supreme Court relied on other factors to define inferior officers, such as whether the officer performed only limited duties, had narrow jurisdiction, and had limited tenure. *Id.* at 671–73. Yet the Court's subsequent decision "in *Edmond* appeared to offer one overall standard for identifying inferior officers." *Special Master for Troubled Asset Relief Program Executive Compensation*, 34 Op. O.L.C. 219, 229 (2010) ("*Special Master for TARP*"). And *Edmond* specifically rejected reliance on the importance of an officer's duties in analyzing the question, explaining that the significance of one's duties "marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather . . . the line between officer and nonofficer." 520 U.S. at 662. The Court has since adhered to *Edmond*'s approach of examining whether an officer is supervised by someone other than the President, with a focus on whether the officer can make final decisions and be removed by a principal officer. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 510 (2010); *Intercollegiate Broad. Sys.*, 684 F.3d at 1339. Although this Office has sometimes considered the *Morrison* factors in addition to *Edmond*, *see Special Master for*

Under this rubric, we believe that Reserve Bank members of the FOMC are inferior officers. It is true that the FOMC, as a body, has final authority over open-market operations. *See* 12 U.S.C. § 263(a). But the work of Reserve Bank members on the FOMC is "directed and supervised at some level," *Edmond*, 520 U.S. at 663, by the Board of Governors, which has the authority to remove them at will. Because the power to remove is a "powerful tool for control," the Court has viewed the removability of an officer by someone other than the President to be strong evidence of inferior-officer status. *Id.* at 664; *see Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 510 (2010) (relying on removability and "the Commission's other oversight authority").

Here, the Board of Governors has statutory authority to "suspend or remove any officer or director of any Federal reserve bank," including any Reserve Bank FOMC member. 12 U.S.C. § 248(f). An agency head's statutory authority to remove a subordinate is plenary absent statutory language to the contrary under the "well approved principle of constitutional and statutory construction that the power of removal of executive officers [is] incident to the power of appointment." *Myers v. United States*, 272 U.S. 52, 119 (1926); *see also, e.g.*, *Ex Parte Hennen*, 38 U.S. (13 Pet.) 230, 259 (1839). "This principle applies to the appointments by the President and by other Executive officers, such as department heads, who are appointing officials." *Removal of Members of the Commission on Federal Laws for the Northern Mariana Islands*, 7 Op. O.L.C. 95, 98 (1983).

Nothing in the statute limits the Board's removal authority. It is true that the Board of Governors must convey "the cause of such removal . . . in writing . . . to the removed officer or director and to said bank." 12 U.S.C. § 248(f). But we think that "cause" in this context means whatever reasons (if any) the Board has for removing the officer, and therefore permits the Board to remove the officer at will. The requirement that the Board notify certain parties of the reasons for removal does not displace the default rule that the appointing authority retains plenary removal authority. Such a notification requirement parallels many statutes that

---

*TARP*, 34 Op. O.L.C. at 231–38, we think *Edmond* states the correct approach to analyzing the principal–inferior distinction. *Accord NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 947 n.2 (2017) (Thomas, J., concurring) ("Although we did not explicitly overrule *Morrison* in *Edmond*, it is difficult to see how *Morrison*'s nebulous approach survived [the Court's] opinion in *Edmond*.").

require the President to "communicate [to Congress] the reasons for . . . removal" of a particular officer but impose no substantive constraint on the removal authority. *See, e.g.*, 10 U.S.C. § 139(a)(1); 22 U.S.C. § 3929(a)(2); 44 U.S.C. § 2103(a).

The structure of the Federal Reserve System is consistent with this conclusion. Congress no doubt intended to give the Federal Reserve System a degree of independence in providing that the members of the Board of Governors—as distinct from the presidents of the regional Reserve Banks—may be removed only "for cause." 12 U.S.C. § 242. In *Wiener v. United States*, 357 U.S. 349, 350, 355–56 (1958), the Supreme Court inferred, despite the absence of any explicit tenure protection in the statute, the existence of such protection for the members of the War Claims Commission based on what the Court perceived as Congress's intent to insulate the Commission from political influence in carrying out its adjudicative functions. But whatever the continuing vitality of *Wiener*'s "questionable" rationale, *Separation of Powers*, 20 Op. O.L.C. at 168 n.115, that rationale does not apply here. Subjecting the Reserve Bank FOMC members to removal at will does not threaten the mechanism Congress chose for protecting the independence of the Federal Reserve System as a whole. The members of the Board of Governors remain tenure-protected, even if their subordinates serving on the FOMC are not.

Principles of constitutional avoidance bolster this conclusion. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (statutes should be interpreted to avoid the reading that "would raise serious constitutional problems" where multiple readings are available). Under the statute, the President may remove members of the Board of Governors only for cause. *See* 12 U.S.C. § 242. If the Governors, in turn, could remove FOMC Reserve Bank members only for cause, then those members would be unconstitutionally insulated from presidential supervision with two layers of for-cause removal protection. The Supreme Court invalidated a similar structure in *Free Enterprise Fund*. There, the Court held unconstitutional tenure protection for members of the Public Company Accounting Oversight Board, because they were removable only by members of the Securities and Exchange Commission, the members of which (the Court assumed) were likewise tenure protected. 561 U.S. at 487, 492–508. Inferring tenure protection for Reserve Bank FOMC members would raise grave constitutional questions for substantially the same reasons.

12

We recognize that Reserve Bank FOMC members have voting power on a body that is empowered to make final decisions on behalf of the federal government. H.R. 6741, by increasing their ranks from five to twelve, *see* sec. 6, § 263(a), would have increased the collective power of the Reserve Bank FOMC members in that regard, because it would have made them a majority on the FOMC, and therefore able to outvote the seven members of the Board of Governors. Be that as it may, we agree with the D.C. Circuit, which reached a similar conclusion with respect to copyright royalty judges supervised by the Librarian of Congress, that the plenary supervision that the Governors exercise over the Reserve Bank FOMC members is enough to make the latter inferior officers. *See Intercollegiate Broad. Sys.*, 684 F.3d at 1340–41 (severing removal protections of copyright royalty judges gave the Librarian of Congress the "direct ability to 'direct,' 'supervise,' and exert some 'control' over the Judges' decisions" such that they became inferior officers). Just as the power to remove is incident to the power to appoint, the power to supervise and direct is incident to the power to remove. *See Myers*, 272 U.S. at 135; *Proposed Executive Order Entitled "Federal Regulation,"* 5 Op. O.L.C. 59, 61 (1981) (noting that Congress is presumably aware that agency heads "perform their functions subject to presidential supervision on matters of both substance and procedure"). The Board's ability to supervise Reserve Bank FOMC members through the removal authority means that Reserve Bank members would have remained inferior officers, even if H.R. 6741 had made them a majority on the FOMC. *See, e.g.*, *Intercollegiate Broad. Sys.*, 684 F.3d at 1340–41.

We thus disagree with the suggestion of the court in *Melcher*, *see* 644 F. Supp. at 519–20, that Reserve Bank FOMC members are subject to dismissal by the Board of Governors only for cause. Instead, Reserve Bank FOMC members are subject to plenary supervision and control by their co-participants on the FOMC, the members of the Board of Governors, and therefore are inferior, rather than principal, officers.

## 2.

We further conclude that, as inferior officers, the FOMC's Reserve Bank members are appointed in conformity with the Appointments Clause. Congress may vest the appointment of inferior officers in the President, a head of a department, or a court of law. U.S. Const. art. II,

§ 2, cl. 2. Here, Congress has done so by providing for each FOMC Reserve Bank member to be selected to his position as president of a Reserve Bank with the approval of the Board of Governors, which is the collective head of a department (the Federal Reserve System). The Board of Governors does not, however, select which presidents serve on the FOMC; that function is performed instead by the boards of directors of the Reserve Banks, bodies that are not competent to appoint officers of the United States. *See* 12 U.S.C. § 263(a). We think that structure is nonetheless constitutionally permissible because the function of serving on the FOMC is germane to the duties of Reserve Bank presidents, and therefore assigning them the duties of FOMC membership does not require a new constitutional appointment.[5]

As a threshold matter, each Reserve Bank FOMC member's initial selection as a Reserve Bank president is consistent with the procedures identified in the Appointments Clause. The Supreme Court has long held that a subordinate to the head of a department may select an inferior officer if the department head approves the appointment. In *United States v. Hartwell*, 73 U.S. (6 Wall.) 385 (1868), the Court concluded that "a clerk in the office of the assistant treasurer of the United States" was a validly appointed officer because he was selected by "the assistant treasurer . . . with the approbation of the Secretary of the Treasury." *Id.* at 392. Even though the Secretary of the Treasury merely approved his subordinate's choice, the clerk was "appointed by the head of a department within in the meaning of the constitutional provision upon the subject of the appointing power." *Id.* at 393–94; *see Free Enter. Fund*, 561 U.S. at 512 n.13 (noting that appointments made by the Chairman of the Securities and Exchange Commission with "the approval of the Commission" would "satisf[y] the Appointments Clause" (internal quotation marks omitted) (citing, *e.g.*, *Hartwell*, 73 U.S. at 393–94)); *accord United States v. Mouat*, 124 U.S. 303, 307–08 (1888); *United States v. Sears*, 27 F. Cas. 1006, 1009 (C.C.D. Mass. 1812) (No. 16,247). *Hartwell* agreed with an even older tradition of Attorney General opinions approving similar appointments. *See Power of the Secretary of the Treasury to Remove*

---

[5] We do not in this opinion address the constitutionality of the method of appointing Class A and B directors of the Reserve Banks, who are selected by regional member banks with little involvement by the Board of Governors. *See* 12 U.S.C. § 304. The proposed legislation would not have directly affected this long-standing method of selecting the directors of the Reserve Banks.

*Inspectors of Hulls and Boilers*, 10 Op. Att'y Gen. 204, 205–07 (1862) (concluding that an initial designation of inferior officers by a board consisting primarily of the Secretary's subordinates may have "narrowed and fettered" his "sphere of selection" to some degree, but that the Secretary's approval "g[a]ve[] force and effect to the designation and breathe[d] into the action of the designating board the breath of official life"); *Tenure of Office of Inspectors of Customs*, 1 Op. Att'y Gen. 459, 459 (1821) (recognizing that inspectors of customs were appointed by collectors of duties with "the approbation of the Secretary of the Treasury"). This Office has accordingly advised that, so long as a head of a department approves the selection of an inferior officer, the department head's subordinates may do much of the legwork of the appointment process. *See Assignment of Certain Functions Related to Military Appointments*, 29 Op. O.L.C. 132, 135–36 (2005) ("*Military Appointments*").

Under these established principles, Reserve Bank presidents are selected in a manner that allows them to exercise the authority of an officer of the United States. Six members of a Reserve Bank board of directors— three Class B directors and three Class C directors—make the initial selection of a Reserve Bank president. 12 U.S.C. § 341. Under H.R. 6741, all nine members of the board of directors would have made the initial selection. H.R. 6741, sec. 8, § 341. The directors' picks are then subject to the "approval of the Board of Governors." 12 U.S.C. § 341. The Board is collectively the head of a department, the Federal Reserve System, which "exercise[s] governmental authority without being subordinated to any broader unit within the executive branch." *Separation of Powers*, 20 Op. O.L.C. at 152–53. The Board's members are appointed by the President and are removable (for cause) only by the President; they report to no one else in the Executive Branch. *See* 12 U.S.C. §§ 241–242; Memorandum for the Files, from Harold F. Reis, Office of Legal Counsel, *Re: Application of Section 9(a) of the Hatch Act to a Federal Reserve Agent* at 9 (Mar. 6, 1964) (concluding that, for Appointments Clause purposes, and "consistent with the history of its establishment and on the basis of precedents, the Board of Governors of the Federal Reserve System constitutes a department and the Governors the head thereof"); *cf. Free Enter. Fund*, 561 U.S. at 512–13 (concluding that the multi-member Securities and Exchange Commission acting as a body is a head of a department under the Appointments Clause). Under *Hartwell*, the head of a department's

approval of the Reserve Bank presidents makes their selections comport with the Appointment Clause.

Although the Board of Governors is limited to approving or rejecting the selections made by the Reserve Bank directors, the Board also supervises the directors, ensuring that, as the department head, it retains sufficient control and accountability over the directors' selections.[6] The Class C directors who select the Reserve Bank presidents are not only themselves appointed by the Board of Governors, but they are also removable by the Board at will. *See* 12 U.S.C. §§ 248(f), 305. While the other selectors are Class B directors elected by regional member banks of the Federal Reserve System, *id.* § 304—and H.R. 6741 would have added Class A directors—the Board of Governors can also fire those directors at will, *id.* § 248(f), and it generally supervises all Reserve Bank boards, *id.* § 248(j). Moreover, because each member of the FOMC must be approved by the Board of Governors, and there are no time limits or other restrictions on approving the selections, the Board could indefinitely reject proposed candidates until the directors propose Reserve Bank presidents to the Board's liking. These powers give the Board effective control over which Reserve Bank presidents are selected for its approval. They create sufficient "scope for the judgment and will of the person or body in whom the Constitution vests the power of appointment," *Civil-Service Commission*, 13 Op. Att'y Gen. 516, 520 (1871), as the Appointments Clause requires. Reserve Bank presidents are therefore selected to their five-year terms consistent with the Appointments Clause.

Because Reserve Bank presidents are selected in that manner, they may be designated to serve on the FOMC without new constitutional appointments. An appointment to an underlying position makes an appointee constitutionally competent to perform not only the duties associated with that position, but also any duties that are "germane to the offices already

---

[6] Different questions would arise if Congress required the Board of Governors to appoint Reserve Bank presidents from a list of individuals compiled by an entity not under the Board's control. *See, e.g.*, Letter for Richard Shelby, Chairman, Senate Committee on Rules and Administration, and Amy Klobuchar, Ranking Member, Senate Committee on Rules and Administration, from Samuel R. Ramer, Acting Assistant Attorney General, Office of Legislative Affairs at 1–2 (May 16, 2017) (observing that a bill that would have required the President to appoint the Register of Copyrights from a list of individuals generated by a seven-member panel consisting of persons not under presidential supervision would have violated the Appointments Clause).

held." *Shoemaker v. United States*, 147 U.S. 282, 301 (1893); *see Weiss v. United States*, 510 U.S. 163, 175–76 (1994); *id.* at 196 (Scalia, J., concurring in judgment). When an appointing authority selects an official for a position, that authority has judged the official competent to perform additional duties that are reasonably related to those already associated with that position. *See Separation of Powers*, 20 Op. O.L.C. at 158–59. In approving the selection of Reserve Bank presidents to their positions, the Board of Governors has implicitly concluded that the presidents would be competent to serve on the FOMC, as they compose the small pool of individuals—two for each of the twelve regional Reserve Banks—who are eligible to be tapped for the five FOMC positions currently set aside for Reserve Bank members. The president of the New York Reserve Bank invariably serves on the FOMC, and the other four Reserve Bank slots on the FOMC rotate among the eleven other Reserve Banks at predictable intervals. *See supra* note 2 and accompanying text. And since, under existing law, all Reserve Bank presidents are already eligible to serve on the FOMC, the provision in H.R. 6741 to give each of the twelve Reserve Banks a guaranteed slot on the FOMC, *see* H.R. 6741, sec. 6, § 263(a), likewise would have merely added germane duties to those already performed by the officials. The only significant proposed additions to the duties associated with service on the FOMC under the bill would have been directly related to monetary-policy-making functions already exercised by the FOMC: to require decisions of the Board of Governors to authorize emergency lending to be approved by a two-thirds vote of the FOMC and to authorize the FOMC to set the interest rate on balances held by Reserve Banks on behalf of commercial banks as part of their required reserves. *Id.* sec. 4(1)(B), § 343(3)(A); *id.* sec. 5, § 461(b)(12)(A). We thus think that FOMC service, under existing law or under H.R. 6741, fits comfortably "within the contemplation of those who were in the first place responsible for the[] appointment and confirmation," *Separation of Powers*, 20 Op. O.L.C. at 158 (internal quotation marks omitted), of Reserve Bank presidents. They are therefore constitutionally eligible to serve on the FOMC without a new constitutional appointment and would have remained eligible even under H.R. 6741.[7]

---

[7] It would present a different question had Congress added eligibility for FOMC service for the first time to the duties of Reserve Bank presidents. Whether FOMC service is germane to the duties of Reserve Bank presidents would turn on a more detailed compari-

## III.

Finally, we conclude that the methods of removing Reserve Bank members of the FOMC are constitutional. To promote political accountability within the Executive Branch, the Constitution requires an appropriate officer to possess removal authority. Typically, as both a constitutional and a statutory matter, the removal authority lies with the appointing authority. *See, e.g.*, *Myers*, 272 U.S. at 119 (referring to the "well approved principle of constitutional and statutory construction that the power of removal of executive officers was incident to the power of appointment"); *Keim v. United States*, 177 U.S. 290, 293 (1900) (presuming that the department head who appointed an inferior officer had the power of removal). Although no statute expressly governs the removal of FOMC members, a Reserve Bank president may be removed at will from his Reserve Bank position either by the Board of Governors, 12 U.S.C. § 248(f), or by the Reserve Bank's board of directors, *id.* § 341. Removing a Reserve Bank president from that post would also, as a practical matter, remove him from the FOMC. The power of the Board of Governors to remove Reserve Bank presidents at will tracks the constitutional and statutory default: the Board of Governors, as the appointing authority, also has the removal power. The harder question is whether Congress may concurrently vest the removal authority of Reserve Bank FOMC members in the Reserve Banks' boards of directors. *See id.* (authorizing a Reserve Bank's board of directors "to dismiss at pleasure" its officers and employees). We conclude that the removal authority of the boards of directors may constitutionally be exercised only with the approbation of the Board of Governors; the relevant removal provisions may be read to require such approbation.

---

son of the duties performed by both positions. *See, e.g.*, *Application of the Appointments Clause to a Statutory Provision Concerning the Inspector General Position at the Chemical Safety and Hazard Investigation Board*, 30 Op. O.L.C. 92, 99–103 (2006). We need not decide that question here.

We also need not decide whether a Reserve Bank president who is never designated to serve on the FOMC is an officer of the United States, or the constitutional status of the Reserve Banks more broadly. *See supra* note 3. The decisive point here is that a Reserve Bank president has been adjudged by the Board of Governors, a proper appointing authority under the Appointments Clause, as competent to serve on the FOMC.

We do not believe that the Reserve Bank boards of directors could constitutionally dismiss Reserve Bank FOMC members without the approval of the Board of Governors. The Appointments Clause limits the authority to assign or delegate appointment-related powers to officials other than those identified by the Constitution as having that power. We have long advised, for instance, that the President alone may appoint officers by and with the advice and consent of the Senate. *See Military Appointments*, 29 Op. O.L.C. at 134–35. Congress may authorize the President to delegate to department heads the authority to appoint inferior officers who do not require Senate confirmation, because the Appointments Clause allows Congress to give that authority to department heads. *See id.*; *Delegation of the President's Power to Appoint Members of the National Ocean Research Leadership Council*, 21 Op. O.L.C. 38, 39 (1997). But the President's constitutionally assigned authority to appoint officers subject to the Senate's advice and consent is not delegable. *See Military Appointments*, 29 Op. O.L.C. at 134–35.

In recent years, we have similarly advised that the power to appoint inferior officers not subject to Senate confirmation may be delegated only to officials identified by the Appointments Clause as competent to appoint inferior officers. *See, e.g.*, E-mail for Robin M. Stutman, Executive Office for Immigration Review, from Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Question About Removals* (Oct. 14, 2010 12:39 PM). After all, "by naming three permissible repositories of appointment authority—the President, the Heads of the Departments, and the Courts of Law—the Excepting Clause implicitly indicates that the power may not be vested in some other person." *Military Appointments*, 29 Op. O.L.C. at 135.[8] That conclusion is consistent with early opinions of the Attorney General holding that "Congress has no power whatever to vest the appointment of any employé, coming fairly within the definition of an inferior officer of the government, in any other public authority but the President, the heads of departments, or the judicial tribunals." *Appointment and Removal of Inspectors of Customs*, 4 Op. Att'y Gen. 162, 164 (1843); *accord Civil-Service Commission*, 13 Op.

---

[8] The reasoning of our *Military Appointments* opinion anticipated our later advice that the power to appoint inferior officers may not be delegated to an official below the head of a department, although in that opinion we declined to "provide a definitive answer" to the question. 29 Op. O.L.C. at 135.

Att'y Gen. at 521–22. And it honors the structural and functional considerations on which the Clause is based. "The diffusion of power carries with it a diffusion of accountability." *Free Enter. Fund*, 561 U.S. at 497. Accountability is fostered by requiring, in the decision to appoint an inferior officer, the personal involvement of a department head directly accountable to the President. While the Appointments Clause "does not prohibit substantial involvement of subordinates in the appointment process," *Military Appointments*, 29 Op. O.L.C. at 135, it does preclude Congress and appointing officials from eliminating the need for any involvement in the appointment decision by the officials who have been constitutionally assigned that function.

Those same principles of political accountability apply to the power of a department head to remove inferior officers. When it comes to the supervision of an officer within the Executive Branch, the removal power is perhaps even more significant than the appointment authority. *See, e.g.*, *Bowsher v. Synar*, 478 U.S. 714, 726 (1986) ("Once an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey." (internal quotation marks omitted)). Accordingly, we have advised that the authority to remove inferior officers may not be delegated to an agency official other than the department head, or another official constitutionally competent to appoint that officer in the first place. Although, unlike the power to appoint officers, the power of removal is not expressly enumerated in the Constitution, that power is frequently treated as a necessary correlate to the power to appoint. For example, we have long maintained that the President's power to remove officials appointed by and with the advice and consent of the Senate cannot be assigned to another official just as his appointment power may not be. *See, e.g.*, *Centralizing Border Control Policy Under the Supervision of the Attorney General*, 26 Op. O.L.C. 22, 24–25 (2002) ("*Centralizing Border Control Policy*"); *Relation of the President to the Executive Departments*, 7 Op. Att'y Gen. 453, 465 (1855). We have conceived of both the power to appoint and the power to remove such officers as being among the non-delegable authorities "prescribed by the Constitution." *Centralizing Border Control Policy*, 26 Op. O.L.C. at 24–25 (internal quotation marks and emphasis omitted). Since the power to remove inferior officers is likewise "an incident of the power to appoint them," *Myers*, 272 U.S. at 161, we think that Congress similarly may not assign the power to remove inferior

officers to officials other than those who may appoint inferior officers under the Appointments Clause. Such a delegation would improperly diffuse accountability for the supervision of inferior officers beyond the President and other appointing officials specified in the Appointments Clause.

Under these principles, we do not believe that Congress could constitutionally vest the authority to remove Reserve Bank FOMC members in the Reserve Bank boards of directors. The boards of directors are not heads of a department, courts of law, or the President.[9] Indeed, the boards may not even be part of the federal government. *See supra* note 3. Congress therefore may not constitutionally assign them the authority to remove inferior officers, such as Reserve Bank FOMC members.

We believe, however, that the Reserve Bank authorizing statute may be read and administered to avoid this unconstitutional result. Just as the Board of Governors' approval is required for the appointment of Reserve Bank presidents, so too should the statute be read to ensure that boards of directors exercise their removal power over Reserve Bank presidents subject to the approval of the Board of Governors. Read in isolation, 12 U.S.C. § 341 authorizes Reserve Bank boards of directors to "dismiss at pleasure" bank officers, including presidents serving on the FOMC. At the same time, the statute makes clear that all classes of directors are subservient to the Board of Governors, which can suspend or remove directors at will, *id.* § 248(f), and can "exercise general supervision" over Reserve Banks, *id.* § 248(j). These extensive supervisory powers would enable the Board of Governors to require boards of directors to seek the approval of the Board of Governors before they remove FOMC Reserve Bank members. This reading of the statute would harmonize the Board of Governors' supervisory authority with the boards of directors' removal authority and prevent an unconstitutional result. *See Edward J. DeBartolo Corp.*, 485 U.S. at 575.

Although section 341 permits boards of directors to "dismiss at pleasure" Reserve Bank presidents, such language does not expressly foreclose a requirement that the Board of Governors approve any such dismissals.

---

[9] We need not address constitutional restrictions on Congress's power to vest the authority to appoint or remove an executive branch official in a court of law or on other "interbranch" appointments and removals. *See, e.g.*, *Ex parte Siebold*, 100 U.S. 371, 398–99 (1880).

The statute provides that the boards of directors have the power to "appoint" Reserve Bank presidents, but makes clear that such authority is subject to approval by the Board of Governors. *See* 12 U.S.C. § 341. It is at least reasonable to read the statute to permit the Board of Governors to require its approval before boards of directors remove Reserve Bank presidents, given the long-standing interpretive principle that the power to remove is incident to the power to appoint. *See Keim*, 177 U.S. at 293; *Hennen*, 38 U.S. at 259; *Tenure of Office of Inspectors of Customs*, 1 Op. Att'y Gen. at 459 ("As the approbation of the Secretary of the Treasury is necessary to put them into office, I presume they cannot be put out of it without the like approbation."); *see also Power of the Secretary of the Treasury to Remove Inspectors of Hulls and Boilers*, 10 Op. Att'y Gen. at 207–09; *Appointment and Removal of Inspectors of Customs*, 4 Op. Att'y Gen. at 165. And if the Board of Governors administers the statute to require and make such approvals, that would satisfy the constitutional requirement that a competent appointing official retain ultimate authority to approve each removal. So construed and executed, the statute's removal provisions would be constitutional.

## IV.

In sum, H.R. 6741 would have expanded the powers of the FOMC and the significance of its Reserve Bank members. The proposed legislation would have reinforced that all members of the FOMC are officers of the United States who must be appointed consistent with the Appointments Clause. But we concluded that members of the FOMC are appointed in a constitutional manner and that they would have continued to be so under the amendments proposed by H.R. 6741. The statute likewise can be read to avoid unconstitutionally assigning removal authority over FOMC members to the regional Reserve Banks' boards of directors by requiring the approval of the Board of Governors for any such removal. We accordingly recommended no constitutional objections to this proposed legislation.

HENRY C. WHITAKER
*Deputy Assistant Attorney General*
*Office of Legal Counsel*